New-London,<br>July, 1833.

Witter<br>v.<br>Richards.

---

## WITTER *against* RICHARDS.

| 10 | 37 |
|----|----|
| 71 | 705 |

A creditor attaching the goods of a partnership, to secure a debt against one of the partners, can take only the interest of that partner in such goods; which is only his share of what remains after the partnership accounts are taken.

And it makes no difference, whether the company creditor, at the time of giving the credit, knew of the existence of the partnership or not; for the effect of the credit given to increase the funds of the partnership is the same, whether it be a known or a dormant partnership.

The creditors of a partnership consisting of A and B, who were mostly ignorant of the partnership and dealt with A alone, after the partnership goods had been attached, by C, to secure a debt in his favour against A individually, with a view to save expenses, consolidated their debts and took a note to D for the amount; it being agreed between them and B, that he should not be called upon beyond the value of the partnership goods. D, in a suit on such note, afterwards attached the same goods. A and the partnership were insolvent, and had no other property than the goods attached, which were of less value than the amount of the note to D. On a bill in chancery, brought by D against C, claiming a priority of lien, it was held, 1. that the agreement between the partnership creditors and B was a fair and proper one as between them, and that neither C nor A could complain of it; 2. that D was entitled to the priority claimed; 3. that the only adequate remedy was in chancery, where all the parties interested might be brought together, and their several rights determined.

THIS was a bill in chancery, stating, That on the 9th of *April*, 1832, and for a year before, *Stephen C. Hutchinson* and *Luther Kinne* were copartners in a small shop in the town of *Griswold ;* that on the 9th, 14th and 19th days of *April* of that year, they possessed certain goods, of the value of 800 dollars, purchased by them of the plaintiff and of others whose debts the plaintiff has assumed ; that on said 19th of *April*, M. J. *Richards*, one of the defendants, as guardian of certain mi-

nor children, attached said goods, in a suit in the name of the judge of probate, on a bond given to said judge, by *William Kinne,* for the benefit of said children, and executed by said *Hutchinson,* as surety ; which suit is still pending ; that afterwards, on the 19th of *April,* the plaintiff procured a writ against said firm, on a note given by them for goods sold and delivered and debts assumed, and attached the same goods, and has since obtained judgment and execution ; that he put this execution into the hands of the same officer who served the first-mentioned writ, and directed him to levy it upon said goods ; that *Richards* has forbidden him to sell said goods, and he, fearing a suit from *Richards,* is unwilling to sell them ; that said company, and each member thereof, is insolvent, and no other property to satisfy said execution can be obtained ; that the plaintiff has a lien upon said goods, but the prior attachment, if it is to remain, will more than cover them ; that the plaintiff is not able fully to prove when said partnership commenced or terminated, or what property it possessed. The bill prayed for a discovery from the partners ; that the avails of said goods may be applied to the plaintiff's debts ; and that *Richards,* the judge of probate and the officer be enjoined against selling said goods, or interfering with the lien of the plaintiff thereon.

The following facts were found by a committee, and agreed to, by the parties. Early in *January,* 1831, *Hutchinson* and *Kinne* entered into partnership in trade, each to share in the profit and loss. They bought goods, and commenced retailing in a shop built by them on *Kinne's* land. The first goods were bought by both the partners ; but the purchases were generally made by *Hutchinson ;* and during a certain period, they were usually charged to the firm. They both continued in the shop until *April,* 1831, when, the business being small, *Kinne* went to work on a farm, and ceased to be an active partner. *Hutchinson* then conducted the business, and the goods thereafter were generally charged to him, except by those who had sold goods to the partnership, early in their business. In *March* or *April,* 1831, *Kinne* proposed to sell out his interest ; but it was not done ; nor was any settlement made until *April,* 1832, when a dissolution was signed and published ; and on the 9th of that month, all the goods were attached, as stated in the bill, for *Hutchinson's* separate debt ;

*New-London,*
July, 1833.

Witter
*v.*
Richards.

and the partnership debts are more than the whole value of the goods.   On the 19th of *April*, the partnership creditors, with a view to save expenses, consolidated their debts and took a note for the amount to the plaintiff, and thereupon attached said goods.   But when the goods were sold, and when the note was taken, and when *Richards'* writ was sued out, the creditors, with one exception, did not know, that *Kinne* was a partner ; and at the taking of this note, it was agreed, that *Kinne* should not be called upon beyond the value of the goods.   All the goods attached were the property of the firm.   The company and *Hutchinson* were insolvent and had no other property than these goods.   Before the attachment by the judge of probate, *Kinne* declared to several persons, that he owned half the store, but had no interest in the goods.   After the attachment, he acknowledged, that a regular partnership had been formed, and that no settlement had taken place.

An interlocutory decree was passed, by consent, under which the goods were sold for less than the plaintiff's debt.

The case was reserved, by the superior court, on the questions whether the plaintiff had a superior right to the goods, and whether a court of equity ought to interfere.

*Goddard* and *J. W. Huntington*, for the plaintiff, contended, 1. That the company creditors have priority, as to the partnership property, over a creditor of one of the partners. *Brewster* & al. v. *Hammet* & al. 4 *Conn. Rep.* 540.   *Nicoll* & al. v. *Mumford*, 4 *Johns. Chan. Rep.* 525.   3 *Kent's Com.* 3.   The defendants may claim, perhaps, that this general rule is not applicable to the present case, because the goods were furnished to one of the partners, the plaintiff being ignorant of the fact that there was a partnership.   But this does not destroy the superior equity of the partnership creditors.   As they created the fund in question, they were entitled to it, to satisfy their claim.

2. That the agreement with *Kinne* did not alter the rights of the plaintiff to pursue the partnership property.   It was made on good consideration, to prevent the expense, which would attend the prosecution of separate suits in favour of all the creditors ; which would exhaust much of the partnership fund.

*Strong,* contra, contended, 1. That the reason why partnership property is first liable to partnership debts, is, because *the partnership was trusted ;* but here, the credit was given to *Hutchinson* alone ; for the creditors, when they sold their goods, did not even know that *Kinne* was a partner. That an attachment by a creditor of one of the partners, for his individual debt, under such circumstances, will hold against a subsequent attachment, by a creditor of the partnership, for a partnership debt, was explicitly decided, by the supreme court of *Massachusetts,* in *Lord* v. *Baldwin,* 6 *Pick.* 348. The court said, that the meritorious ground of preference in other cases, did not there exist. The cases of *Enderby,* ex parte, 2 *Barn. & Cres.* 389. *Smith* v. *Watson,* 2 *Barn. & Cres.* 401. and *George* v. *Claggett,* 7 *Term Rep.* 359. go to support the same doctrine.

2. That the agreement with *Kinne* to discharge him, was a fraud upon the separate creditors.

3. That the case is not within the jurisdiction of a court of equity. The rule is the same in a court of law as in a court of equity. If the partnership creditor is entitled to the preference claimed, he may have the full benefit of it, by *legal* proceedings. *Pierce* v. *Jackson,* 6 *Mass. Rep.* 242.

WILLIAMS, J. That the partnership creditors generally, have a right to the partnership effects, in preference to the creditors of an individual partner, has not been contested. It was settled by Lord *Hardwicke,* in *West* v. *Skip,* 1 *Ves.* 239. It was recognized in *New-York,* in *Nicoll* & al. v. *Mumford,* 1 *Johns. Chan. Rep.* 522 ; in *Massachusetts,* in *Pierce* v. *Jackson,* 6 *Mass. Rep.* 242. and by this court, in *Brewster* & al. v. *Hammet,* 4 *Conn. Rep.* 540.

But it is claimed, that as this partnership was a dormant one, and as the creditors did not know of its existence, they ought to stand upon the same ground as the separate creditors of *Hutchinson,* whom they all trusted. Now, if the partnership creditors had done any act to hold out *Hutchinson* as the sole owner of the goods, or if there was any fraud in the case, or even if they could be made responsible for the declarations of *Kinne,* there certainly would be some foundation for this argument. But no fraud is found ; and they cannot be responsible for *Kinne's* declarations ; nor have they done any act intend-

New-London,
July, 1833.

Witter
v.
Richards.

ing to give this man a false credit. The partners, therefore, must stand upon their rights, as recognized in a court of equity.

/ And the right of the separate creditor depends upon the interest which each partner had in the partnership property; and such creditor can have nothing but what his debtor had therein. *King*, ex parte, 17 *Ves.* 119. And neither partner has any thing, separately, in the *corpus* of the partnership effects; but the interest of each is only his share of what remains after the partnership accounts are taken. *Church* & al. v. *Knox* & al. 2 *Conn. Rep.* 523. And therefore, if a separate creditor takes out his execution against the partnership effects, he must take the undivided share, in the same manner as the debtor himself had it, and subject to the right of the other partner.' *Taylor* v. *Fields*, 4 *Ves.* 396. Now, if this be the correct principle, I see not why it is not applicable to this case, whether the company creditors knew of the existence of the partnership or not. They have the rights of the partnership; but the separate creditor has only the rights of an individual partner. *Hamper*, ex parte, 17 *Ves.* 407. The goods of the partnership creditors went to increase the partnership stock, while the claims of the separate creditor could only go to increase the individual property; and in this particular case, his claim is founded merely on the suretyship of one of the partners,—when neither the company, nor the individual has received any benefit therefor. And the company property is here as much increased as if the partnership was not a dormant one. I see not, therefore, why the rights of the creditor should not be the same, in the absence of all fraud.

Here no fraud is found; nor is there any evidence that there was any design to keep the connexion secret. At first, the concern was as public as its limited nature would admit. A short time satisfied them, that its business was not sufficient to employ both; and one returned to his farm; and he represented, that he had no interest in the goods. Whether he did this by mistake, or fraudulently, does not appear;—nor are the rights of the creditors of that firm to be bound by this representation.

The *English* cases cited by the defendant, are cases arising under the statute of 21 *James*; as *Smith* v. *Watson*, 2 *Barn. & Cres.* 401. *Enderby*, ex parte, 2 *Barn. & Cres.* 389.

where possession remaining with the bankrupt gives the assignees a right to the goods ; or cases arising under the statute of set-off ; as *George* v. *Claggett,* 7 *Term Rep.* 359. But no case is cited where the question arose between the creditors of an insolvent firm, one of whom was a dormant partner, and a creditor of the individual partner, except the case of *Lord* v. *Baldwin,* 6 *Pick.* 348.

That was an action against the sheriff, for neglecting to levy the plaintiff's execution against *John Brown,* on goods attached by the plaintiff, as his property and his stock in trade. *Brown* transacted business in his own name; and these goods were also attached, by other creditors. The defendant, as an officer, afterwards attached the same goods, in a suit brought by *Bogart & Co.,* against *Aaron* and *John Brown. Bogart & Co.* obtained a judgment, and notified the defendant to retain the proceeds to satisfy this judgment.

This *Aaron Brown* was a dormant partner with *John.* But all the goods sold by these creditors were furnished for the copartnership thus unknown. *Bogart & Co.* claimed priority, as their suit only was against the firm.

The court very properly decided, that they had no such priority. And it is to be observed, that to make that case compare with this, the plaintiff's debt should have been a debt due from *John Brown* only, but it really was due from *John* and *Aaron ;* and being so, the court held, that the plaintiff had the same right to the fund as that creditor, who discovered that there was a dormant partner, and obtained judgment against both. The *facts,* then, in this case, do not warrant the inference that the court in *Massachusetts* would have put the separate creditor on an equality with the co-creditors, though their reasoning may seem to imply it. That case, therefore, though from a court whose opinions are entitled to great respect, cannot controul this. The *result* in that case is perfectly compatible with the decision in this ; and it is apparent, that the court meant only to decide the case before them; for they say : " Whether a private creditor of his could seize property so situated, and hold it against the ostensible owner, is a question of a very different nature." *p.* 351. It is believed, then, that no authority justifies the position taken by the defendants.

It is, however, objected, that the partnership creditors agreed to look only to the partnership effects, and discharge *Kinne.*

Now, this agreement, made to procure a note and save much <span style="float:right">*New-London,*<br>July, 1833.</span> expense, was, as between them, a fair and proper one ; and unless the defendants can show, that it was injurious to their interests, they cannot complain ; and if the partnership stock was the proper fund for partnership creditors to resort to, the defendants cannot complain any more of an agreement by those creditors to resort to it, than if they had actually resorted to it ; much less can they complain, that they have discharged *Kinne* from any part of the debt ; as *Kinne* was not their debtor, and, they have no interest in his affairs. *Hutchinson* could not complain of this ; because if he pays it, he can look to *Kinne,* notwithstanding this agreement ; and the defendants have only *Hutchinson's* rights. Besides, it is found, that the company and *Hutchinson* had no other property.

It is also objected, that there is adequate remedy at law. It is true, that this plaintiff may sue the officer, and recover; and then *Richards* may bring another suit ; and as he would not be bound by the verdict in the first cause, he may also recover. It is admitted, that this state of things would give the officer a right to file his bill in chancery ; but it is said, this plaintiff cannot do it. Now, it seems to me, that if these facts shown by the officer could give this court jurisdiction, the same facts shown by another person interested, would give the same jurisdiction : in other words, that the jurisdiction depends rather upon the facts shewn than the person who shews them.

Here is a fund for which several persons are struggling. One only can obtain it. While winding their way through a court of law, the fund may be almost exhausted. It seems to me peculiarly proper, that these conflicting parties should be brought before a court of chancery, where all may be heard, and their several rights determined ; and that this is the only adequate remedy. It is the very mode recommended in *England,* by the common law judges, who say : " The safest line of conduct for the sheriff to pursue, was, to put some person in possession of the defendant's share as vendee, leaving him and the parties interested to contest the matter in equity, where a bill might be filed, stating that he had taken possession of the property, and praying that it might not be disposed of until all the claims were arranged." *Parker* v. *Pistor,* 3 *Bos. & Pull.* 289.

I would, therefore, advise the superior court to grant the prayer of the bill.

The other Judges were of the same opinion, except CHURCH, J., who was not present when the case was decided.

Decree for plaintiff.