CALVIN WASHBURN, CHARLES A. WHITING, JOHN M. WASHBURN, THOMAS P. CUSHING, ARTHUR WILKINSON, CALVIN TOWNSLEY, CHARLES W. TOWNSLEY, JOSEPH STEEN, EUGENE W. PROUTY, EDWARD KIRKLAND, GARDNER C. HALL AND NATHANIEL CHENEY *v.* BANK OF BELLOWS FALLS, DAVID CRAWFORD, ZENAS SMITH, JOHN SMITH, LEAVITT H. ROBERTS, DANIEL HARRIS, JR., JOHN WATSON, SOLOMON HIGGINS, ASA LAWTON, CHANDLER PRATT AND GEORGE H. LAWTON.

[IN CHANCERY.]

In equity the creditors of an insolvent partnership are entitled to have the partnership assets applied in satisfaction of their debts, in preference to the creditors of the individual partners, notwithstanding the separate creditors may have first attached those assets.

In asserting this right the partnership creditors prevail over the separate creditors by virtue of a lien, which each partner is supposed to have, by implied contract, upon all the partnership effects, until all the partnership debts are paid.

Washburn et al. *v.* Bank of Bellows Falls et al.

It is sufficient for the partnership creditors, in such case, to make out a *prima facie* case of insolvency; and, *per* REDFIELD, J., if the defendants desire to have an account taken of the partnership dealings, so as to determine the exact state of the liabilities and assets, they must file a cross bill for that purpose.

The partnership creditors, having made separate successive attachments of the partnership property, and having resorted to a court of equity for relief against the attachments of the separate creditors, must share the assets *pro rata*, and not in the order of their attachments.

In this case it was held, that the defendants were justified, by former decisions made in this state, in contesting the case, and therefore no costs were allowed to the orators for the proceedings before the court of chancery; but, as the decision of the chancellor was reversed on appeal, it was held, that the orators were, as matter of right, entitled to their costs in this court.

APPEAL from the court of chancery. The orators, who brought this bill as well in behalf of themselves as of such other creditors as might join with them, alleged, that the defendants Asa Lawton, Pratt and George H. Lawton had been partners in trade, doing business under the firm of A. Lawton & Co.; that the firm became indebted to the orators respectively, and the orators commenced suits at law against the firm and attached therein the partnership property, which suits were still pending; that the other defendants, except Roberts, were respectively creditors of individual members of the firm, and had also, prior to the orators' attachments, commenced suits at law for the recovery of their debts, and had attached therein the same partnership property which was afterwards attached by the orators, and were prosecuting their suits to judgment, with a view of levying their executions, when obtained, upon the same property; that the defendant Roberts was an authorized officer, and, as such, had served the defendants' writs, and now had in his possession the partnership property attached; that the firm was insolvent; and that the property attached was insufficient in amount for the payment of the debts of the partnership creditors and also of the separate creditors. And the orators prayed, that the partnership might be decreed to be dissolved, that an account might be taken of the assets and a receiver be appointed, that the funds might be applied, first, in payment of the debts due to the partnership creditors, in such order and proportion as they might be

entitled to the same, and secondly, if any surplus remained, in pay-
ment of the debts due to the separate creditors, that the separate
creditors might be enjoined from levying their executions, when ob-
tained, upon the property, and that Roberts might be enjoined from
parting with the property, except under the order and direction of
the court of chancery.

The Bank of Bellows Falls answered, admitting that their debt
was against Asa Lawton and one Black, and that they had attached
thereon the partnership property of the firm of.A. Lawton & Co., as
alleged in the bill. The defendant John Smith deceased, and the
bill was revived against his administrator, who appeared, and an-
swered, that the debt due to his intestate was against Asa Lawton,
and that the partnership property of A. Lawton & Co. had been
attached thereon, as alleged in the bill ;—and both these defendants
insisted, that they had good right to hold the property so attached,
by reason of the priority of their attachments over those of the part-
nership creditors. As to the other defendants the bill was taken as
confessed. The answers were traversed, and testimony was taken
on the part of the orators, tending to prove the existence and insol-
vency of the firm, as alleged in the bill ; and the testimony on the
part of the defendants tended to prove that a large portion of the
capital stock of the firm was furnished by Asa Lawton.

The injunction prayed for was granted, and a receiver was ap-
pointed, who subsequently reported, that the assets of the firm, which
had come to his hands and were subject to the order of the court,
amounted to $1302,29. It was admitted, that the attachment of the
Bank of Bellows Falls was first upon the property in point of time,
and that the amount due upon that debt was $1591,34 ; and that
the attachments of the defendants Crawford, Zenas Smith and John
Smith, amounting in all to $711,93, were also prior, in point of
time, to the attachments of any of the partnership creditors. It was
also admitted, that the whole amount of the debts due to the defend-
ants from individual members of the firm, on which the partnership
property was attached, was $2452,23 ; and that the amount of debts
due from the firm to the orators, on which the same property had
been attached, was $1328,77.

The court of chancery, November Term, 1844,—Williams, Ch.,
—dismissed the bill ; from which decree the orators appealed.

Washburn et al. *v.* Bank of Bellows Falls et al.

*W. C. Bradley* for orators.

The orators contend, that the funds in the hands of the receiver belonged to them, in preference to the creditors of the individual partners. It is not disputed, that the consideration of this question is not to be regarded by courts of law, and that, when the sheriff takes the partnership property on the attachment of a separate creditor, it is his duty to seize the whole and sell so much as is the proportion, in the firm, of the debtor partner, and that the purchaser will hold that undivided share in the property with the other owners, treating it as held in common. *Reed et al.* v. *Shephardson*, 2 Vt. 120. Such seems to have been the common law, as holden by Ld. Ch. J. HOLT in *Heydon* v. *Heydon*, 1 Salk. 392 ; 1 Wats. on Part. 98 ; and that courts of law, in departing from it, have not acted on sound principles seems to have been very clearly intimated by LD. ELDON, in *Waters* v. *Taylor*, 1 Ves. & B. 301. Nor would there be any ground of complaint in equity, if the creditor, after such proceeding at law, left the firm solvent. *Williams ex parte*, 11 Ves. 3. But it cannot be denied, that courts of equity have always holden, that the creditors of a partnership, whenever it becomes necessary for the payment of their claims, have a right to be paid out of the property of the partnership, while it remains such, in preference to the creditors of the individual partners ; Story on Part. 175, § 97 ; Ib. 470, § 326 ; Story on Eq. 625, § 675 ; Ib. 500, § 1253 ; for, from the formation of the partnership, the whole property of the firm is considered as a trust fund for carrying on the business, making the necessary purchases, paying incidental expenses, and, of course, incurring debts ; and each partner is a trustee for the other, to do this in good faith and not apply the funds to his private benefit. 2 Story's Eq. 1243, 1253. Story on Part., §§ 97, 109, 128. *Egberts* v. *Wood*, 3 Paige 517. Nor does an attachment of the property at law alter the case ; Story on Part. 373, 379, §§ 261-3, and notes ; it stands good until an interference in equity,—and such is the manifest ground of the decision in *Reed et al.* v. *Shephardson*, 2 Vt. 120.

*A. Keyes* for defendants.

We admit, that the English law is against us upon the general principle, and that in some of the states it has been adopted, while

others have held the contrary. But the English rule is not binding here.

1. It is contrary to the spirit of our collecting laws. The policy of the English law is to prevent attachments and build up large companies; and this is carried out through their bankrupt laws; and the whole action of their legislature aims at this equal distribution. The policy of our law is, "the first in diligence, the first in right." All our legislation in regard to collecting is based upon this principle. Even when general assignments began to be adopted, which tend to equal distribution, the legislature declared, that no general assignment should be valid. And we have a right to expect, that courts, as they always have done, will carry out that policy. By our attachment law a *lien* is formed by actual manucaption, which can never be disturbed by adverse process;—but in England no *lien* can be formed by attachment, or *fi. fa.*, which will withstand their bankrupt law, which aims at equal distribution.

2. This rule is contrary to our whole experience and practice from the first organization of the state. It was supposed, after the case of *Reed et al. v. Shephardson*, 2 Vt. 120, was decided, that the matter was put to rest. The legislature, although they have frequently revised the attachment law, have never interfered with that decision, nor with the general practice in reference to the attachment of partnership property.

3. The reason of the rule in England has ceased to exist; and *Cessante ratione, cessat ipsa lex."* If a system has grown up there, which cannot well be altered, notwithstanding the reason of that rule has ceased, surely, when the question is first presented here, "shall we adopt that rule?" We shall be slow to adopt it without reason. The reason for the rule, given by the courts, is, that all partnership effects and contracts are *joint*, but not *joint and several.* But in the case of *Devaynes* v. *Noble*, [1 Mer. 529,—*S. C.*, 2 Rus. & Mylne 495,] the court of chancery decided, that partnership debts and funds were *joint and several;* and Judge Story says, [1 Story Eq. 626, that this is now the established doctrine, and then says, this being the case, "There seems no ground to make any difference whatsoever, in any case, between joint and several creditors, as to the payment out of the joint or separate funds. 1 Story's Eq. 626, note.

4. But were we to adopt the English rule here, it furnishes, in the present case, no ground for relief. It has always been held, that the partnership creditors have no lien upon the partnership effects, and farther, that they have no equity, in their own right, in preference to the separate creditors, but that the joint creditors come in through the equity of the other partners; for the other partners generally have an equity to have the partnership funds pay the partnership debts. *Ex parte Rufin*, 6 Ves. 126. *Ex parte Williams*, 11 Ves. 3, 5, 6. 1 Story's Eq. 625. *Twiss* v. *Massey*, 1 Atk. 67. *Campbell* v. *Mullett*, 2 Swanst. 574. Such being the rule, the joint creditors can have no greater equity than the other partners had, and are not entitled to relief, when relief would be denied to the other partners, if they had brought the bill. But in this case Asa Lawton put in the whole capital stock, and the other partners none. By doing this he so far diminished his separate estate; and equity would seem to require, that those funds should first go to pay his separate debts.

The opinion of the court was delivered by

REDFIELD, J. This is a bill, brought by the creditors of a partnership, on the part of themselves and so many as may join in the suit, claiming a preference over the separate creditors of the partners, and that the latter may be restrained from levying upon the partnership effects, until the claims of the plaintiffs are satisfied. The Bellows Falls Bank is the first in the order of the attachments, and that and the other creditors of the separate partners are sufficient to absorb all the funds of the partnership, which have been reduced to cash by the receiver. The other separate creditors have attached subsequently to the bank; and the plaintiffs, who are partnership creditors, have also attached, subsequent to the bank and some other of the separate creditors. All these claims have gone into judgments, and the sum of the plaintiffs' claims, united, is also sufficient to absorb the partnership funds. So that the controversy in the present case is to the full extent of all the property attached.

No question can be reasonably made, I think, in regard to the failure and *utter insolvency of the partnership*, at the time of the first attachment by the bank, although there is some testimony in

the case, going upon the basis of a very imperfect and unequal estimate of assets and liabilities, which would lead to the contrary result. The only real difficulty in this case is, to determine whether the partnership creditors are entitled to a preference over the separate creditors of the partners, in the distribution of the partnership funds. And this, I apprehend, could not now be esteemed a question of any difficulty, upon the principles of the English common law. By that law the separate creditors are indeed entitled to execution against the partnership property, but in that case can only sell the interest of that partner, against whom they have obtained judgment. As Lord Alvanley declares the law, in *Chapman* v. *Koops*, 3 B. & P. 289, " By the law of England the creditor of any one partner may take in execution that partner's interest in all the tangible property of the partnership, and the purchaser will thereby become a tenant in common with the other partners." And the purchaser would not have a right to molest the other partners, until all accounts between them have been settled. But if the other partners wish to take advantage of this circumstance, they ought to file a bill in equity against the vendee of the sheriff." Chancellor Kent (3 Com. 37) says, " The interest of each partner in the partnership property is his share in the surplus, after the partnership accounts are settled and all just claims satisfied." This doctrine is fully sustained by the English cases.

It follows, then, that while a partnership creditor may sell the entire interest in all the tangible property of the firm, the creditors of the separate partners can sell only the interest of that partner, which may be something, or nothing, as the concern shall prove solvent, or insolvent, on a final settlement of all its concerns. So that in this way the entire property of the partnership might be sold upon execution, against each separate partner, and still nothing accrue to any of the purchasers, since all must purchase subject to the claims of all the joint creditors. This, then, being the rule, it is useless to attempt to exclude the preference of joint creditors, since every sale, upon a separate execution, *must be made* subject to their claims. So that if this subject is put upon the basis of the English common law, the rights of the joint creditors are evidently preferred, even in a sale, upon execution, of the interest of the separate partners. It is evident, too, that, in ordinary cases, such a sale could

not much avail the separate creditors and would not often be resorted to. And when it is done, it is always in the power of the other partners to resort to chancery, for the purpose of having a final account taken and the concern closed.

It is not, perhaps, very important to go into any abstract reasoning to show the grounds upon which this rule is founded, or its justice, or propriety. It is certain, that no rule in English jurisprudence is better settled. Almost every case upon the subject speaks of this rule as one long settled. Mr. Justice Story [1 Eq. Jurisp. 626, § 677] lays down the rule in regard to the right of separate creditors to sell only the interest of the partner, who is their debtor, after the final account shall be taken, almost in the same terms above quoted from Lord Alvanly's opinion in *Chapman* v. *Koops,* referring to *West* v. *Skip,* 1 Ves. 237, 239; *Barker* v. *Goodair,* 1 Ves. 85; *Dutton* v. *Morrison,* 17 Ves. 205; *Nicoll* v. *Mumford,* 4 Johns. Ch. R. 522; *Fox* v. *Hanbury,* Cowp. 445, and many others, in addition to those already cited,—most of which, more or less directly, involve that point, and all recognize it, as a well established rule upon the subject. This rule gives the creditors of the separate partners the power over the partnership effects, which their debtors themselves possess, that is, to control their own interest, which consists in what shall remain of their share, after all debts of the concern are liquidated. But in the following section of the same work, (pages 627 and following,) it is explicitly declared, that equity will interfere to restrain the sale of the interest of one of the partners, until that interest can be definitely ascertained; and that this injunction will be granted at the suit of the other partners, or the partnership creditors, or the debtor, whose share is levied upon; and that this will be done equally, whether the interest of the partner is seized by the sheriff, by the assignees in bankruptcy of the separate partner, by his assignee by contract, or by his executor or administrator. In the case of *Brewster* v. *Hammet,* 4 Conn. 540, such an injunction, at the suit of the other partners, they being also insolvent, was denied; but the general principle above stated was fully recognized, and likewise the right of the partnership creditors to maintain such a bill. See also *Taylor* v. *Field,* 4 Ves. 396, and note to Sumner's edition, and the other cases cited by Mr. Justice Story.

It is indeed true, as declared by Lord Eldon, in *Waters* v. *Taylor*, 1 Ves. & B. 301, that the old law before the time of Lord Mansfield was somewhat different. Then, in a sale at law, the equities of the other partner were not regarded, but the aliquot proportion of the partner was disposed of by the sheriff, without regard to the ultimate balance; *Heydon* v. *Heydon*, 1 Salk. 392; *Jackey* v. *Butler*, 2 Ld. Raym. 871. The same rule at law is recognized in this state, so far as the rights of separate creditors at law are concerned. *Reed* v. *Shephardson*, 2 Vt. 120; *Clark* v. *Lyman*, 8 Vt. 20. But this rule at law was never intended to limit the equities of the other partners, or of the partnership creditors, but to refer them to a court of equity, as is said in *Chapman* v. *Koops*, 3 B. & P. 289 and in *Whitney* v. *Ladd*, 10 Vt. 165, and in *Clark* v. *Lyman*, 8 Vt. 290. The books are all so full to this point, that it seems needless farther to discuss it. It is found in all the English books, where the subject is named, and in most of the American States. *Pierce* v. *Jackson*, 6 Mass. 242; *Rice* v. *Austin*, 17 Ib. 197; *Wilson* v. *Conine*, 2 Johns. 282; *Tappan* v. *Blaisdell*, 5 N. H. 190; Remarks of Dewey, J., in *Allen* v. *Wells*, 22 Pick. 150; *Moody* v. *Payne*, 2 Johns. Ch. R. 548; *Burrall* v. *Acker*, 23 Wend. 606. This, too, is but the rule of the civil law upon this subject. 1 Story's Eq. Jur. 632. 1 Domat, B. 1, tit. 8, § 3, art. 10.

Unless, then, we are prepared to put the law of this state upon a different basis from the law of any other state, almost, upon this subject, we must recognize the right of these partnership creditors to be first paid. It is true, that they prevail here over the separate creditors by virtue of a lien, which each partner is supposed to have, by implied contract, upon all the partnership effects, until all the partnership debts are paid. This gives him an equity prior to that of the separate creditors; and it is only by calling this equity to their aid, that the partnership creditors are enabled to maintain their claims in this case. But this is not a new principle in equity, for one man to prevail in a suit, not by his own superior equity, but in consequence of that which resides primarily in some third party, who is indeed generally a necessary party to the bill. This is the case where a creditor claims to have the benefit of securities put in the hands of his debtor by some other debtor, the two debtors standing, perhaps, in the same relation to the creditor, but one being

principal and the other surety, as between themselves. So, too, in all cases where one holds funds, which are ultimately to go in a particular channel, equity will interfere on behalf of the party ultimately to be benefitted by such appropriation, notwithstanding he may not be a party to the original transaction. This is always more or less the case, where a court of equity interferes in marshalling assets.

But if it were necessary to test the soundness of this rule by the reason upon which it is founded, I should have no doubt of its prevailing. Mr. Justice Story seems [1 Eq. Jurisp. 626, in notes,] to apprehend, that the case of *Devaynes* v. *Noble*, [1 Merivale 529, before Sir William Grant, at the Rolls, *S. C.* on appeal before the Chancellor, Lord Brougham, 2 Russell & Mylne 495,] which recognizes a partnership contract as joint and several, and not joint only, has wholly subverted the principle, upon which any distinction has ever been made between joint and several creditors, as to their right to a preference in regard to joint and several funds.

I do not find any such doubts, in regard to the soundness or the continued existence of this right of preference of joint creditors in regard to joint funds, notwithstanding the case of *Devaynes* v. *Noble*, in any other book, except the one above referred to. And with all reasonable distrust of my own views, in consequence of the doubt there suggested, it still seems to me, that the difficulties of Mr. Justice Story are wholly without foundation, so far as the right of joint creditors to a preference is concerned. I take it to be a well established rule, in regard to the law of partnership, that all their contracts, so far as the creditors are concerned, are joint and several, binding each member for the whole debt, and that such is the general light in which partnership contracts have always been regarded. When such contracts have been spoken of as joint only, it has been with reference to bankrupt or insolvent laws, or the marshalling of assets in courts of equity, and not because the claims of the creditors and the obligations of the debtors were not several, as well as joint. The general rule, at law certainly, and in equity, unless it is controlled by an intervening insolvency, either of the partnership or some of the partners, is, most undoubtedly, that the partnership creditors have a right to go, not only against the joint, but also the separate, property of each partner, and may take their

entire debt, either out of the estate of a deceased partner, or out of the property of a living partner, unless injustice is thereby likely to be done to others, in consequence of a burden, which *might* be made to rest either upon one, or the other, of two funds, being taken out of one fund, to the exclusion of other claims, which cannot be made to rest upon the other fund.

It is not meant here to assert, that a several suit may be maintained, at law, against one of the partners; for the contract is technically joint only,—but no more so than any other joint contract, which binds each contractor for the whole debt, or *in solido* as it is termed. And when the death of one of the joint contractors intervenes, the entire debt may be taken out of his estate. The same is true as to the estate of a deceased partner. *Wilkinson* v. *Henderson*, 1 Mylne & Keene 582; *Devaynes* v. *Noble*, 1 Mer. 529; *Thorpe* v. *Jackson*, 2 Y. & Col. 553; *Braithwaite* v. *Britain*, 1 Keene 219 and note.

It is upon this very principle of the law of partnership, that each partner is bound for the *whole debt* of the partnership, and so, as to the share of the other partners, is virtually a surety, that a court of equity will suffer one partner to maintain a lien upon the partnership property, until he is released from such suretyship, when all the debts of the firm are paid. In this it is not perceived there is anything unjust, or unusual, so far as it regards separate creditors even. Nor is there anything singular, in enabling partnership creditors to enforce this lien, which is thus created upon the partnership funds in favor of the creditors of the partnership, although not created primarily for their benefit, but for the security of the other partners. This is but carrying out the most familiar principles of the law of principal and surety, as well between themselves, as between each and their common creditor. Authorities upon this point might be multiplied almost indefinitely, both in England and this country. This is the recognized and decided law of all the New England States, with the exception of Rhode Island, of which state we have no reports, and has been recognized there, we think, by the circuit court. Most of the other states have also recognized it; and no one has expressly denied its existence or obligation, so far as we know, with the exception of Pennsylvania and Georgia. The following cases may be named—in addition to those already cited: *Witter*

v. *Richards*, 10 Conn. 37. *Egberts* v. *Wood*, 3 Paige 517. *Fereday et al.* v. *Wightwick et al.*, 5 Eng. Cond. Ch. R. 377; 1 Tomlyn, 250; *S. C.*, 4 Eng. Cond. Ch. R. 317; 1 Russell & Mylne 45. *M'Culloh* v. *Dashiell*, 1 Har. & Gill 96. *Hall* v. *Hall*, 2 M'Cord's Ch. R. 302. 2 Dessau. 270. *Woddrop* v. *Wards*, 3 Dessau. 203. *Smith* v. *Johnson*, 2 Edw. 28. *Commercial Bank* v. *Wilkins*, 9 Greenl. 28.

Arguments, which have been, or which may be, drawn from the possible or probable abuses of this rule, apply with equal force to other cases, where the same or analogous principles are recognized. It has long been settled, that the debtor has the right to prefer any of his creditors to any extent. He may do this even upon the eve of insolvency, unless expressly or impliedly restrained by some express statute, or by the general scope of the insolvent or bankrupt laws of the state. He may, too, at the time of contracting, as is often done, appropriate a portion of his estate, real, or personal, by mortgage, or pledge, to secure the fulfilment of that particular obligation. One may, too, appropriate a portion, or all, of his estate, unless restrained by express law, for the security of some one, who may have become, or is about to become, his surety. And in none of these cases will the rules of law, or equity, interpose any hindrance. And this property, thus set apart for the security of the surety merely, may, in case of the insolvency of the surety, be reached by the creditor, in a court of equity, before even the right of the surety to appropriate it attaches. In all this we see but an exemplification of that portion of the law of partnership which we have been discussing. And of this rule of law, by which a principal may assign property to secure his surety, or by which the creditor, in certain contingencies, may reach that property through an equity, which resides in another primarily, we hear no one complain. It has been supposed, too, that, if joint creditors have a preference as to joint funds and separate creditors as to separate funds, of which we do not speak now, there will be afforded great facilities for shifting funds from one portion of one's estate to the other, as may comport with the fancy or caprice of the debtors, more than with the just claims of the creditors. But this will always be the case, when any preferences are allowed to be made by debtors. It matters not how these preferences are to be effected by the debtors. They will be

37

likely always to be unjustly exercised in many cases. The only effectual cure is to prohibit them altogether. But such a prohibition, to be effectual, must reach all mortgages and pledges; which would operate far too great an incumbrance upon the free spirit of commercial enterprise. Such a law could not be endured, probably, for any long time, especially in this age and country.

We think, therefore, that, in this case, the partnership creditors are entitled to a preference over the separate creditors, who first attached. The decree of the chancellor is therefore reversed, and the cause remanded to him, with directions to enter up a decree for the orators to be paid their debts out of the partnership funds, to the full extent, if the money in the hands of the receiver is sufficient for that purpose, and the residue, if any, to be paid to the creditors of the separate partners, until expended, in the order of their attachments; and if the funds in the hands of the receiver are not sufficient to pay all the orators' claims, then to be paid to them, in proportion to the amount of their demands, as far as it will go.

Something has been said, in argument, in regard to the uncertainty of the state of the proof as to the actual state of the funds of the partnership; and it is suggested, that possibly, if a full account of all the assets were taken, it might appear, that the concern was in fact solvent, and that there was no necessity for the plaintiffs to resort to this fund for payment. If that were so, doubtless the plaintiffs' bill must be dismissed. But if the defendants have any confidence in being benefitted by having such an account taken, they should have filed a cross bill for that purpose, and then the account could have been taken,—but at their expense. But where the plaintiffs are able, as they have done in this case, to make out a *prima facie* case of insolvency, we do not think they should be compelled to ask an account of all the partnership dealings, so as to determine the exact state of the liabilities and assets, and the precise interest of each partner,—which doubtless they might do, by making all the partners parties to the bill. And in ordinary cases the chancellor will exercise a discretion, whether to pass a decree for the orator, before this is done. But in the present case such indubitable proof of insolvency is already in the case, as to leave no reasonable doubt that such must be the fact, upon a final account. We do not therefore recommend the chancellor to subject the par-

Washburn et al. *v.* Bank of Bellows Falls et al.

ties to that expense and delay, unless the defendants desire it, at their own expense.

It is possible the partnership creditors may think themselves entitled to full pay, in the order of their attachments; and so they would be by the Massachusetts law, when the partnership attachments defeat the attachment in favor of the separate creditors. *Pierce* v. *Jackson*, 6 Mass. 242. But at common law the attachment of the separate creditor is valid, so far as the interest of his debtor is concerned. And Chancellor Kent held, in *Moody* v. *Payne*, 2 Johns. Ch. R. 548, 549, that .the sheriff could not be restrained, by injunction, from proceeding to sell the interest of the partner; but the contrary doctrine is now held. 1 Story's Eq. Jur. 629. *Skipp* v. *Harwood*, 2 Swanst. 586, 587. And as it is only by the aid of a court of equity that the orators can prevail, we think they must take the fund according to the rules which prevail in such courts, that is, that " equality is equity." For at law, in this state, the claim of the separate creditors is perfectly valid, to the full extent. *Reed* v. *Shephardson*, 2 Vt. 120.

Hitherto we do not think costs should be allowed the plaintiffs in the court of chancery, for the reason, that the defendants, from the decisions which had been made in this state, were fully justified in contesting the matter. In this court, as the plaintiffs have succeeded in reversing the decree of the court of chancery, they are entitled to costs, as matter of right. Future costs will be under the control and in the discretion of the chancellor.