## Case No. 10,593.

### OSBORN v. McBRIDE.

[3 Sawy. 590;[1] 16 N. B. R. 22.]

District Court, D. California. April 5, 1876.

FIRM PROPERTY SOLD ON JUDGMENTS AND EXECUTIONS AGAINST THE PARTNERS SEPARATELY.

Where judgments had been obtained before the commencement of proceedings in bankruptcy against each of two partners in trade by a separate creditor of each, and the firm property had been sold under executions issued on the separate judgments, and purchased by an agent of the plaintiff in the separate suits: *Held*, that nei-

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

ther he nor his assignee was entitled to hold the property as against the assignee in bankruptcy of the firm.

[Cited in Crane v. Morrison, Case No. 3,355; Re Sauthoff, Id. 12,380.]

[This was a suit by R. F. Osborn against H. E. McBride.]

S. P. Hall, for complainant.
J. W. Winans, for defendant.

HOFFMAN, District Judge. The facts as admitted by the parties at the return of the rule to show cause are as follows: On the ninth day of October, 1875, Isaac Pollard and Alexander A. Cook filed their petition praying to be adjudged bankrupts individually and as a firm, and on the same day were so adjudged. On the fifth day of October, three days previously to the commencement of the proceedings in bankruptcy, judgments were obtained against Pollard and Cook, respectively, in two several suits instituted against them by a separate creditor of each. The interest of each in certain leasehold property described in the bill was levied on by the sheriff, and subsequently sold under the several executions. The sale took place subsequently to the proceedings in bankruptcy. No order enjoining the sale had been obtained.

The plaintiff in each of the suits was the same person. The property was bid in by his agent. The interest of Pollard was sold for $252.14, and that of Cook for $127.70. The execution against Pollard was for $207 with interest and costs. That against Cook was for $85.65 with interest and costs. Certificates of sale were duly issued to the purchaser at the execution. These certificates are alleged to have been subsequently assigned to one J. S. Lutz, a bona fide purchaser for value, and without notice of any irregularity or invalidity in the sales. They were subsequently assigned to the defendant who, the bill avers, has since collected rents of the sub-tenants, and has sued one of them who declines to pay.

The complainant avers that the leasehold property thus sold was the property of the firm and constitutes a part of the joint assets. I do not deem it necessary at this stage of the proceedings to consider the question how far the right of a judgment creditor to sell property of the debtor, levied on before the commencement of proceedings in bankruptcy, is affected by the fact that such proceedings have been instituted, and the title of the bankrupt divested before the sale is actually made. I will assume that the purchaser, at the execution, acquired all the right and title which each of the judgment debtors separately had in the property sold. And that the present defendant has succeeded to those rights. But if the property levied on was firm assets, what was the interest of each partner, which his separate creditors could levy on and apply to the satisfaction of their claims? Evidently his interest in the firm, i. e., his share of the surplus that might remain after all the partnership debts were paid. Mr. Collyer, in his work on Partnership, states, as undoubted law, that where the separate creditor of one partner has taken partnership property in execution for his separate debt, the other partners may file their bill against the separate creditor, the debtor partner and the sheriff, praying a general account of the partnership and payment of what is due to them, and that the creditor and sheriff may be enjoined from proceeding under the execution and selling the stock and effects; and a court of equity will give relief accordingly. Section 831. And the same relief is given in favor of the assignees in bankruptcy. 15 Ves. 599; 4 Ves. 396.

In Moody v. Payne, 2 Johns. Ch. 548, Mr. Ch. Kent refused to enjoin an execution and sale until the partnership accounts were taken and liquidated, on the ground of the absence of precedents. But Mr. J. Story considers this an insufficient reason for denying the injunction, and Mr. Ch. Kent admits in his Commentaries (volume 3, p. 65, 5th Ed., in note) that the more fit and suitable rule of practice would seem to be to have the adjustment of the partnership accounts precede the sale.

In Douglas v. Winslow, 20 Me. 92, 93, Mr. Justice Weston, speaking of the right of a separate creditor to attach the interest of one partner in the goods of the firm, says, "This right has been repeatedly exercised and has never been defeated so far as the cases have come to our knowledge, unless in behalf of partnership creditors." So in Tappan v. Blaisdell, 5 N. H. 193, it is said by Richardson, C. J., to be "well settled that partnership property cannot be holden to pay the separate debt of an individual partner until all the partnership debts are paid. All that can be taken is the interest of the debtor in the firm—not the partnership effects themselves, but the right of the partner to a share of the surplus that may remain after all the debts are paid."

In Vermont the partnership creditors are in equity preferred to separate creditors, out of the partnership assets of an insolvent firm, notwithstanding the separate creditors have first attached those assets. Washburn v. Bank of Bellow Falls, 19 Vt. 278; Bardwell v. Perry, Id. 292.

Mr. Ch. Kent states the rule to be "that partnership effects cannot be taken by attachment or sold on execution to satisfy a creditor of one of the partners only, except it be to the extent of the interest of such separate partner in the effects of the settlement of all accounts. The sale is made subject to the partnership debts, and is, in effect, only a sale of the undefined surplus interest of the partner defendant, after the partnership debts are paid." He adds in a note, "the doctrine of moieties is now exploded, and the creditors under execution or process of foreign attachment, or assignees of a partner

or purchasers at sheriffs' sales, can take only the interest of the debtor in the partnership funds, subject to the accounts of the partnership. That interest, and not the partnership effects is sold, and that interest is merely the share found to belong to the debtor upon an adjustment in equity of the partnership accounts." See Story, Partn. §§ 261, 262. Gow, Partn. § 365, says, "The levy under the execution transfers no part of the joint property. It merely gives the right to an account."

I do not understand that these general and, indeed, elementary principles are denied. But it is contended that the purchaser at the executions, or his assignee, may now hold the partnership property bought by him freed from the claims of the joint creditors, because the interest of both parties has been levied on and purchased by him, and this accounting is not now asked for by either partner. No authority is cited for this position. The rights to be protected are those of the joint creditors; and perhaps those of the separate creditors might be involved if the plaintiff in the two suits against the individual partners is allowed to appropriate all the joint assets. The bankrupt act [of 1867 (14 Stat. 517)] explicitly directs that the joint assets shall be first applied to the payment of joint debts, and the separate assets to the payment of separate debts. The right thus given to these classes of creditors, respectively, is absolute, and must be enforced by the court. It is conferred by law, and is not evolved out of, or through the equity of the partners, which is by some supposed to be the only foundation of the analogous rule of the court of chancery. The sale on execution of either or both the partners' interest in the joint assets in satisfaction of a separate debt gave to the purchaser, as we have seen, only an interest in the assets which might remain after the payment of the partnership debts. The fact that he purchased the interest of two of the partners sold on separate executions, can have no effect to enlarge the interest of either acquired on the separate sale of that interest. He took merely a right to an account, and can now hold the partnership assets only subject to that account, and in entire subordination to the claims of the joint creditors. If, upon the settlement of the joint estate, any surplus should result in favor of either of the partners, it will belong to the purchaser of the interest of that partner, provided the judgment be valid and not obnoxious to any objection under the bankruptcy act. This is all the interest which the sheriff could sell, or has pretended to sell, and all the purchaser could acquire.

In the case of Menagh v. Whitwell, 52 N. Y. 149, the question presented in this case was elaborately examined. It was there held, upon reasons which admit of no answer, that when a partner sells his interest to a stranger, or it is sold upon execution against him, his right to have the partner-

ship debts paid, and his liability therefor discharged out of the property, are not divested by the sale. And this right is not affected by the fact that the separate interests of all the partners are thus disposed of. It was further held, that partnership debts have, in equity, an inherent priority of claim to be discharged out of the partnership property, and as between a firm and its creditors, the title of the former to the joint property is not divested by any separate transfers to strangers by either one or all of the partners in payment of their individual debts, or by proceedings against them separately with reference to their individual interests; and when there has been no transfer by the firm, and the property remains in specie, and capable of being levied upon, it may be followed in the hands of those claiming by virtue of such transfers or proceedings, and may be levied on by a judgment creditor of the firm. I consider this authority decisive.

The question whether the leasehold property was firm assets will of course remain open to contestation. Premises used by partners for the purpose of carrying on their trade prima facie form part of the partnership property. Featherstonhaugh v. Fenwick, 17 Ves. 308. But this presumption may be rebutted. Until this question can be determined, and an account taken if the property be found to be firm assets, the injunction against the defendant must be retained Perhaps the more regular course would be to appoint a receiver to collect the rents pendente lite. But I see no objection to permitting them to be collected by the assignee, to be held by him as a distinct and separate fund, and to be accounted for to the defendant if the property should not be found to be firm assets, and the judgments and levies prove to be regular and valid, or if, after liquidating the partnership accounts, any surplus should result in favor of either partner individually. In the meantime, he should be enjoined from parting with the certificates, and collecting or attempting to collect the rents.