REED and ROOT *vs.* OTIS SHEPARDSON.

That the law, allowing the creditors of a *firm* a preference to the creditors of each partner, in attaching the property of the *firm*, has never been adopted in this state.

That the interest of one partner in the goods of the *firm* cannot be attached to any avail, without taking the goods themselves.

The officer thus attaching is not a trespasser by taking the undivided portion of the separate debtor, though the *firm* prove to be insolvent.

That, in this state, the property of partners is attached as if they were tenants in common.

This action was brought up from the County Court for a hearing upon exceptions, allowed upon a jury trial. The history of the transaction litigated seems to be this. *Joseph Bascom* and *John A. Bascom*, were partners in the clothier's trade, carried on in *Guilford*, during a period comprising the whole transaction. *John A. Bascom* was indebted to one *Dorus Bascom*, who sued his demand, and delivered his writ to the defendant, who, as constable of said *Guilford*, attached an undivided half of the property in question, it being the property of said *firm*, and moved it from the custody of the *firm*, and safely kept it. This attachment was made on the 26th of May, 1823, and the writ was made returnable to the County Court. The said *John A.* absconded on the same day in which the service was made. The said *Dorus*, at the Court holden on the second Monday of March, A. D. 1824, recovered judgment in his suit for about $300, and took out execution, and forthwith delivered it to the defendant, for him to levy it upon said property. The firm of *J.* and *J. A. Bascom* were indebted to *Reed* in the sum of $118, and to *Root* in the sum of $165: and, on the 19th day of March, 1824, *Reed* and *Root*, and *Joseph Bascom*, being together in sight of said property, so in the defendant's custody upon said attachment, the said *Joseph* sold the same to the plaintiffs in payment of their said debts, which they then cancelled. This sale was announced to the defendant by said *Joseph*. The plaintiffs made a demand of the property; but the defendant refused to deliver it, he still holding it upon said attachment: and he soon after advertised and sold it to satisfy the execution of said *Dorus*. The defendant had before sold an undivided half of the same property on sundry executions of creditors against both the said *Bascoms*.

The plaintiffs introduced testimony tending to show, that the property of *J.* and *J. A. Bascom*, liable to attachment, was, on said 26th of May, 1823, and ever since had been, insufficient to pay the debts of said *firm*; and that the *firm* was insolvent. But no account of the concerns of the *firm* was taken, or submitted to the jury.

WINDHAM,
February,
1829.

Reed et al.
vs.
Shepardson.

The plaintiffs made the defendant no offer of any indemnity against the claim of *Dorus Bascom*; but commenced this action of *trover* against the defendant for the property. The defendant, on the trial, objected to the admission of the plaintiffs' testimony, which had a proper tendency to establish such a claim as is above stated. The same, however, was admitted; and the Court instructed the jury to find for the plaintiff, if they believed the testimony; and further, that the rule of damages was the value of the property, and not the amount raised upon the sale at auction. The exceptions were taken to these decisions and instructions, and a new trial was prayed for by the defendant; the verdict having been returned against him for about $315; this being the actual value of the moiety sold and interest upon the same. The cause was argued, at a former term, upon all the points thought of, whether technical or substantial; and again this term, upon such points as the Court suggested would determine the cause.

*Elliot for the defendant*, contended, 1. That the insolvency of the *firm* was not legally proved. It appears from the case that no account of the concerns of the firm was taken, or submitted to the jury. Without this, the insolvency could not have been shown. A deficiency of visible property is not an insolvency which entitles the creditors of the firm to a preference.

2. The plaintiffs cannot maintain *trover* for want of a title to the property. At the time of the attachment, the property was in the *firm*. The taking it out of their possession, if wrongful, left them only a right to sue for it, a mere *chose in action*, which they could not transfer to the plaintiffs. If such taking were legal, as against the *firm*, then the property was in the custody of the law; and the defendant, as an officer, was bound to keep it for the attaching creditor, should he recover in the suit, and to return it to the debtor from whom he took it, if the suit failed. He was not bound to take notice of any sale they could make while he had the custody of the property. There was not, nor could there be, any delivery. It was a mere contract to sell; but no sale. On the credit of this contract the plaintiffs discharged their debts, but that did not vest in them the property contracted about.

The partnership was dissolved by the absconding of *John A. Bascom*; and *Joseph* could not transfer the whole property of the *firm*, had there been no outstanding *lien* upon it. He could have sold no more than his interest; and, half having been sold before, his interest was only one fourth part. The plaintiffs, having discharged their debts, are no longer creditors. On giving that discharge

WINDHAM,
*February*,
1829.

Reed et al.
*vs.*
Shepardson.

they made a contract for the property in question : but did not obtain the property, and if they will sue for it, they must sue in the name of the *Bascoms*, or one of them.

3. There has been no *conversion* by the defendant: A moiety had been sold by the defendant on executions against the *firm*. The prior vendee was as much entitled to the possession as the plaintiffs could be. But neither was separately entitled. The officer was accountable for the whole property. If he delivered to the first vendee, and he should prove bankrupt, what remedy has the partner ? If to the latter, and he be bankrupt, what remedy has said vendee ? If the owners do not agree, he ought not to deliver to either without an indemnity. If the demand of one is the demand of both, then both must sue, and the verdict will protect the defendant. If the defendant was authorised to sell this property on the execution *D. Bascom* vs. *J. A. Bascom*, such sale surely could be no conversion. Now, the plaintiffs do not deny that the portion of each partner, after the debts of the *firm* are paid, is liable to his separate debts. If liable at all, it must be by attachment. As against the *firm*, the attachment is legal. So against all its vendees. And the right to sell to a creditor is no greater than the right to sell for cash with which to pay such creditor. The officer cannot know, nor is he bound to know, whether the *firm* be insolvent, or what particular debts it owes ; or whether any claim for them will be enforced. But he is bound to attach, unless facts and claims, which he must notice at his peril, forbid. If he is not bound to notice, at the time, such facts and claims as the plaintiffs set up, he cannot be so at any after period. And if the sale to the plaintiffs had been after the sale by the defendant on execution, the case would have been the same as it now is. The officer could demand no adequate indemnity against such claims as that of plaintiffs.

4. It does not appear that the defendant knew, or had means of knowing, the insolvency contended for. And this question cannot be tried at law, nor between the parties now before the Court. These parties have no means to come at the amount of property of the firm ; or the amount of debts due to, or from, the firm, nor the relative rights of the partners. Especially, must they be unabl to ascertain these in an action of *trover*.

5. The plaintiffs are entitled to no preference at law or equity. The equity claimed has never been adopted in this state. In *England* it was adoped in analogy to the Bankrupt laws. If it is ever adopted here, it yught to be adopted with the converse principle also, that separate creditors shall have a preference with regard to the separate property. Equality is equity : and this principle,

as the plaintiffs contend for it, is neither equal nor equitable. The credit of the *firm* is the credit of each partner ; and *vice versa*. He refered to several cases in *Mass. Rep.* noted in *Bigelow's Digest, page* 93.

WINDHAM,
*February,*
1829.

Reed et al.
*vs.*
Shepardson.

*J. Phelps, contra.—First.* Partnership funds should first be applied to the discharge of partnership debts.—1 *Caines' Rep.* 343.—2 *John.* 280.—*Amer. Dig.* 264.—The share of each partner is liable to his creditors for his private debts ; but an execution against a partner, for his separate debt, can take only the *interest* of the partner in the partnership property, subject to the partnership debts. The *interest* only of the partner is sold on the execution, and not the effects.—1 *Sw. Dig.* 345.—2 *Con. Rep.* 514.—So also in equity.—*Swift's Dig.* 351.—If a creditor of a partner taken out execution against the partnership effects, he can only have the undivided share of his debtor, and must take it in the same manner the debtor himself had it, and subject to the rights of the other partner.—*Cowper's Rep.* 449.—*Swift's Dig.* 337.—The attachment of the goods of a partnership, by a creditor of one of the partners, is not *valid* against an after attachment of the same goods by a partnership creditor ; or a sale thereof, to satisfy partnership debts : for, at the common law, a partnership stock belongs to the partnership, and one partner, separately, has no interest in it, but only his share of what is remaining after all the partnership debts are paid ; he also accounting for what he may owe to the firm. Consequently, all the debts due from the joint fund must first be discharged, before any partner can appropriate any part of it to his own use, or pay his private debts ; and a creditor to one of the partners cannot claim any interest, but what belongs to his debtor. Whether his claim be founded on any contract made with his debtors, or on a seizing of the goods on execution. *Swift's Dig.* 345.—6 *Mass. Rep.* 242.

*Secondly.* A partnership concern, and all property invested in it, and all rights and liabilities of every kind belonging to it, whether in law or equity, is to all intents, a distinct, separate and independent interest. One partner cannot divert the property of the joint concern to his separate use, without the consent of the other, any more than he could thus take the private property of that individual before the firm was established. This is Common law ; and is fully recognised in this state. The case of *Huntington* vs. *Lyman & Co. D. Chip. Rep.* 438, was settled upon this principle. The creditor of an individual debtor can have no greater right than the debtor himself had. He may, by operation of law, or by the act of the party, put himself in a condition to controul the interest of his debtor in the partnership goods. He may by

WINDHAM,
*February*,
1829.

Reed et al.
*vs.*
Shepardson.

attachment take, not the goods themselves, as such, because they do not belong to his debtor. He might as well take the property of B on an attachment against A. But he may take the *interest* which may remain to his debtor in the goods. It is the *interest* only of his debtor that he can take—it is the *interest* only that he can dispose of. All the right to the goods that his debtor had, he can have, and no more.

*Thirdly.* There can be no doubt of the power of *Joseph Bascom*, one of the *firm*, for and in the name of the firm, to dispose of these goods to pay a partnership debt. Because each partner of a partnership firm has power to sell and dispose of the partnership effects, to adjust and pay debts due from the partnership firm. *Swift's Dig.* 341.—5 *Cranch*, 289.—*Day's Dig.* 397.—*D. Ch. Rep.* 242. And so completely has one partner, in the name and on account of the *firm*, controul over the partnership effects, that if the goods had been sold and transferred, by one of the partners to this *firm*, for the payment of his separate debt, the other partner may bring *trover*, or an action for goods sold in the name of the *firm*, and recover as we have before shown. *Cow. Just.* 48.— 16 *John.* 34.—*Paley on Agency*, 180.—*D. Ch. Rep.* 242.—4 *Taunt.* 684. The sheriff acts at his peril, and is answerable for any irregularity or mistake in taking property on his precept. 1 *Burr.* 31, 32, 33, &c.

From these principles it follows, that the plaintiffs, having purchased this partnership property from one of the partners, in the name and acting for the firm, in payment of a debt due from the firm, the property became vested in them ; and being so vested, the defendant, without right, having disposed of the property, the plaintiffs must recover the value in this action.

The opinion of the Court was delivered by,

HUTCHINSON, J. The principal question which we have to decide is, whether the creditors of a partnership *firm* have such a *lien* upon the partnership effects, that the defendant is liable in *tort*, for holding and selling the property in question, upon an execution against one individual of the partnership ? I say holding and selling ; for the plaintiffs had no pretence of title to this particular property, till long after the defendant attached the same, and held it upon his writ.

The plaintiffs claim that they, as creditors of the *firm* of *J.* and *J. A. Bascom*, had such a *lien* upon the property, which was perfected into a title to this particular property, by a sale to them in discharge of their debts, against the firm, before the defendant sold on execution. And the defendant contends that his sale was an official duty, giving effect to the attachment he made before the

purchase by the plaintiffs ; and that neither his refusal to deliver to the plaintiffs, nor his sale of the property, amounted to a conversion. He also denies that the plaintiffs could acquire any title while his attachment was on the property.

WINDHAM,
*February*,
1829.

Reed et al.
*vs.*
Shepardson.

There seems no dispute what the law is, upon this subject, in *England*, and some of the neighboring states, at least, there is none among the members of the Court. That law is, as we understand from the books, that the creditors of a partnership have a *lien* upon the partnership effects of their debtors in preference to the creditors of the individual members of the *firm*. They have, also, the right to pursue the individual property in common with the creditors of the separate partners ; while the creditors of the separate partners have no right against the partnership property, only to take the interest of their debtor in the *firm*, after the partnership is closed, and that interest ascertained. It is understood, this interest can be taken at any time and sold for what it will fetch.

In *England*, this law took its origin from the same policy whence originated the bankrupt system. The object there is to promote trade ; in order to which they use this law to keep up the credit of trading companies. It creates a monopoly of the partnership property in favor of the partnership creditors.

Aside from the question of policy, to promote some natural interest, there is no more reason in this than there would be in giving a like preference to the creditors of the individual partners. There are many cases of partnerships formed by individuals deeply in debt for the property they severally possess, and which is worked into the partnership in such a manner as not to be traced by the prior creditors, and yet there ought to be a *lien* upon it in their favor. So, there may be cases of partnerships formed by those in debt, who afterwards receive property for the partnership on credit, which may go to pay private debts to the injury of the partnership creditors.

This action is probably the first in which the Courts in this state have ever been called upon to apply the law under which the plaintiffs claim. The argument in behalf of the plaintiffs is very ingenious to induce its application here, and to exclude the difficulties heretofore suggested by the Court. One difficulty, however, yet remains ; we are not sufficiently informed how the creditor of the individual partner can obtain that interest in the partnership property, to which it is conceded he has a right ; namely the interest of his debtor. We can easily conceive how, in *England* and *New-York*, where the property of the debtor is holden from the delivering out of execution, there may be a sale at auction of this interest, because the execution creates a *lien* without any vis-

WINDHAM,
February,
1829.

Reed et al.
vs.
Shepardson.

ible levy and removing the property.  We are told this interest is sold in *Connecticut,* and the purchaser is let into the former interest of the debtor, whatever that may eventually be.   But how the property is guarded against sales by the debtor, and the attachments of other creditors, between the levy and the sale, we are not informed.

In this state, we have no method of attaching goods so as to avail the creditor, but to take them and keep them from the debtor, as was done in this case.   There is no such thing as attaching, or levying upon the debtor's interest in the goods, and advertising and selling the same, and avoid an intermediate sale by the debtor, but to take the goods themselves from his custody. Just so, with regard to the attachments of other creditors, who might have any right to attach.   If, then, the officer, taking the interest of the individual partner in the only way in which he can take it and preserve it for his employer, is to be considered as a trespasser, by reason of such taking, or his sale is to be considered a conversion, when the partnership creditors sue him ; this amounts to a total sequestering of the partnership property, not only to the use of the partnership creditors, but to the partners themselves, as against the creditors of the individual partners.   A decision to this effect would be going great lengths, while our statutes give to the creditors, without distinction, the most unbounded right to secure their debts by attaching the goods and chattels of the debtor, excepting only some articles of necessary use.   Upon this point the difficulties under which the Court have always labored, have not been removed by the argument of the plaintiff's counsel. We seem to want some statute, prescribing some new mode of keeping property safely during the fourteen days that it must, by law, be advertised before a sale ; also, during the pendency of a suit after an attachment ; and, without this, an attachment without removal would be a nullity.

The plaintiffs counsel cite the case of *Pierce* vs. *Jackson,* 6 *Mass.·Rep.* 242, to show the law he contends for to have been adopted there.   In compelling the sheriff to account for the money raised on a sale of partnership goods, the Court, in that case, gave a preference to the creditors of the *firm* : but there the goods appear to have been levied upon and sold, as were these by this defendant.   The Sheriff was not treated as a trespasser for the taking of the goods.   If cases of this kind have before arisen in this state we believe none have been litigated, and the practical course has been to attach the undivided moiety, as was done in this case ; treating the property as holden by a tenancy in common.   It must continue to be so treated, or we cannot attach at all, till the

WINDHAM.
February,
1829.

Reed et al.
vs.
Shepardson.

legislature interfere, and make some new provision for such a case.

This furnishes an answer to that part of the argument of plaintiffs' counsel, which supposes the partnership property to form such a distinct fund as to be intangible by the creditors of one partner. The undivided half is not thus intangible. We need not now decide what would be the effect of a proceeding by the partners, or either of them, or by the creditors of the firm, to bring the partnership to a close, and appropriate the partnership property, *first*, to pay the debts due from the firm, in preference to the individual debts : Such a proceeding differs much from the one before us, which treats the officer as a wrong doer. But, it is urged, that the officer might apply to Chancery, and compel an interpleader, to ascertain to whom the property belongs. In this there would be more reason, if the suit sounded in contract ; if it was a suit for the money raised by the sale. But, even then, we would not force the officer into a controversy that might outlive his office, and be attended with great expense : more especially would we not do it, under circumstances like the present, and let his success in this action of *tort* depend upon the result of that collateral controversy. The parties themselves should litigate such questions ; and if an officer must go into chancery, let him be drawn in as defendant, and not driven in as plaintiff. If the plaintiffs choose to have the question decided in equity, they might bring their bill, and enjoin the defendant from paying over the money, while the suit is depending. The case cited by plaintiffs from 1 *Burrow* is not in point, unless we first decide the property of the *firm* to be sequestered out of the reach of the creditors of each partner. That was a case under the Bankrupt laws ; and was really a dispute between the sheriffs for one creditor, and the assignees of the bankrupt, for the body of the creditors ; and it resulted in a clear case for the assignees ; for the act of bankruptcy was committed December 4th, the judgment and execution, and delivery of the same to the defendants, the sheriffs of London, were on the 5th. The commission of bankruptcy on the 8th, and the assignment was the same day, and the sale by the defendants was the 28th. By the bankrupt laws the assignment vests the property in the assignees, by relation, at the time of the act of bankruptcy. Hence, that fund was exclusive in the hands of the assignees. As we decide this property to be not so sequestered to the exclusive use of the creditors of the firm, there is nothing in that case that can govern this.

The plaintiffs further contend, that the case shows the *firm* of J. and J. A. Bascom to be insolvent, which excludes all idea of any surplus that could belong to the separate creditors. The

Reed et al.
vs.
Shepardson.

case *does* show, that the plaintiffs adduced testimony tending to prove this; but it further shows, that no account of the partnership property had been taken, and none was submitted to the jury. Testimony short of this is too vague and uncertain, and ought not to have been admitted to go to the jury for the purpose, of showing insolvency. Neither ought it to have been admitted for the further reason, that the officer must act, in making his attachment, in reference to such facts as then appear; and he must not be made a trespasser by the result of an accounting, afterwards had between the partners.

So far as we have now disposed of the case, and if no other point could be urged, the whole testimony ought to have been excluded; for it only tends to support a claim under a law never adopted here. Our statute, adopting the common law of *England*, adopts it so far only as it is applicable to our circumstances, and not inconsistent with our constitution and laws. The law now contended for is wholly inconsistent with our statutes concerning attaching, and levying upon, personal estate, and the long usage and uniform decisions that the attaching officer must move the property from the custody of the debtor. It is also inconsistent with our circumstances; as we have no motive to encourage partnerships any more than individual business men. But should the legislature see fit to adopt this law, they can do it, and prescribe a mode to carry it into effect. This was the opinion of *Judge Royce*, upon the first argument of this case, and is the result to which *Judge Prentiss* arrived in vacation, as he informed me when he delivered over the papers, a short time since; and we, who are present, are agreed in the same opinion; and a new trial must be granted.

The case presents a point, not much noticed by counsel, and which may be important in some future disposition of the cause. The case shows, that the defendant had before sold an undivided half of this property, by virtue of other executions against the *firm*. He now has taken and sold an undivided half of the same by virtue of an execution against one of the members of the firm. It is not readily seen, upon this state of things, why the defendant had a right to take and sell, upon said last execution, any more than one undivided fourth of said property. But the parties, who know the facts in the case, can present them on a future trial as the merits require. If the defendant took half, when he should have taken but a fourth part, possibly the plaintiffs may be entitled to recover a fourth part.

New trial granted.

*J. Phelps*, for plaintiff.
*S. Elliot*, for defendant.