## Ferson *v.* Monroe.

If partners sell their stock in trade in order that the proceeds may be applied by the purchaser to pay the separate debt of one partner, instead of going to pay the partnership debts, the sale is void as to creditors of the firm ; though the separate debt of the partner was contracted for money which was put by him into the business and capital of the firm.

Trespass, for taking and carrying away goods. The defendant, who was sheriff of the county, pleaded the general issue,

and in a brief statement justified the taking by Leonard Rund-lett, his deputy, on a writ sued out by James S. Cheney against Orvis B. Perry and Lorenzo D. Perry, partners under the firm of O. B. Perry & Co., returnable to the October term of the Common Pleas for Hillsborough county, A. D. 1848, in a suit in which judgment was rendered at that term for the plaintiff, and the goods taken and sold on the execution. The taking of the goods on the writ by Rundlett, May 4, 1847, was admitted. The debt of Cheney and the process and judgment against O. B. Perry & Co. were also admitted.

It appeared on trial that Orvis B. Perry and Lorenzo D. Perry were partners in trade, at Manchester, under the firm of O. B. Perry & Co., on the 4th of March, 1848, and on that day, by a bill of sale, sold out their stock in trade to the plaintiff, for $1566.86, and took his note for that sum, payable to them or their order, and immediately indorsed the note to Henry Farnum, the father-in-law of Orvis B. Perry.

At the time of this sale the plaintiff was a clerk in the employment of O. B. Perry & Co., and the goods remained on sale in the same shop, a sign having been put up marked "D. D. Ferson, successor to O. B. Perry & Co.," Lorenzo D. Perry having the principal charge of the business as agent or clerk of the plaintiff. L. D. Perry testified that he acted as agent of the plaintiff, and had no interest in the goods after the sale. The goods taken by Rundlett were part of this stock.

To show the consideration on which the note of Ferson was indorsed to Farnum, the plaintiff introduced Farnum's deposition, who testified that O. B. Perry married his daughter; that on the 8th of January, 1846, O. B. Perry gave him a note for $2000, payable on demand; that the consideration of this note was two notes of $1000 each, signed by the witness, payable to his own order, and indorsed by him; that these notes were delivered to Gardner & Bartlett, to be discounted in Boston banks for the benefit of O. B. Perry; that they were discounted accordingly, and renewed from time to time till O. B. Perry failed; that the object of taking the two thousand dollar note from O B. Perry was, that in case of any difficulty, he might

attach Perry's property to secure his liability on the two one thousand dollar notes; that Perry agreed that in case he should fail, or be liable to fail, he would assign property to the witness for the security of these notes; that when Perry failed, he sold out his property to Ferson for $1566.80, and took his note for that sum, and immediately transferred the note to the witness; that Ferson paid the witness $650 on the note April 17, 1848; that the witness paid the two notes of one thousand dollars each in March and May, 1848.

It appeared, that a note which L. D. Perry took on the 24th of April, 1848, for goods sold by him out of the stock, had been transferred by Perry or Ferson to Farnum; that a suit was brought, by Farnum's direction, on the note and judgment recovered, which remained unsatisfied. O. B. Perry died in March, 1850, insolvent. There was no evidence to show whether the debt of O. B. Perry & Co. to Cheney was contracted before or after the sale to Ferson.

The court instructed the jury, that if, in the sale of O. B. Perry & Co. to Ferson, the intention of the parties was to defraud, defeat, or delay the creditors of that firm, the sale, as to such creditors, would be void; that as to creditors, whose debts were contracted after the sale, a mere fraud in law would not make the sale void; but that, if there was an actual fraudulent design by the sale to defraud the creditors of the firm, and Ferson concurred in the design, the sale would be void as to subsequent creditors; that a debtor had a right to prefer one creditor to the rest, provided there was no intention to prevent his property from being applied to the payment of his debts.

The court further instructed the jury, that if the object of this sale was to place the partnership goods in the hands of Ferson, so that the proceeds of the goods should be applied to pay the individual debt of Orvis B. Perry, one of the firm, and thereby prevent the goods of the firm from being applied to pay the partnership debts, and Ferson concurred in this design, the sale would be void as to the creditors of the firm; that it would make no difference though the money which Orvis B. Perry obtained by contracting the debt to Farnum were put into the partner-

ship business and formed part of the capital of the firm ; that if it so became a part of the capital of the firm, it was a fund, to which the creditors of the firm had a right to look for the payment of their debts.

The jury returned a verdict for the defendant, which the plaintiff moved to set aside for misdirection in the foregoing instructions.

*Atherton* and *Flanders*, for the plaintiff.

*Morrison*, for the defendant.

PERLEY, J. When money, obtained on the credit of one partner, is put into the capital of the firm, it is well settled, that no action can be maintained against the firm for the debt so contracted. It is the debt of the individual alone ; and neither the partners nor the creditors of the firm can be affected by the fact, that the money obtained by the individual partner on his own credit was employed by him to furnish his part of the capital used in the business. No lien can be asserted on the partnership funds, against the other partners, for the payment of such a debt. It is immaterial to them whether the proportion of capital furnished by each partner is paid in from ready money in his hands, or from funds obtained on his individual credit.

And the creditors of the firm have not the means of tracing, and are not bound to trace, the funds of the partnership to the remote sources, from which they may have been derived. They have a right to regard the actual capital, on which the business of the firm is transacted, their stock in trade especially, as the fund, out of which their debts are to be satisfied. The creditor of an individual partner, who has trusted to him alone, can have no reason to complain that his money has been applied by his debtor to increase the fund, out of which the debts of the firm are to be paid. He has the security to which he was willing to trust, that is to say, the liability of the individual partner.

We are of opinion that the jury were correctly instructed that it made no difference, though the money, which O. B. Perry

obtained by contracting his debt to Farnum, was put into the business of the firm, and constituted part of their capital. The authorities fully sustain this position. *Sylvester* v. *Smith*, 9 Mass. 119; *Elmly* v. *Lye*, 15 East, 7; *Sifflin* v. *Walker*, 2 Camp. 308; *Loyd* v. *Freshfield*, 2 Carr. & Payne, 325; S. C. 9 Dowl. & Ry. 119; *Tappan* v. *Blaisdell*, 5 N. H. Rep. 193.

There was evidence in this case tending to show that the sale by O. B. Perry & Co. to the plaintiff, was made for the purpose of having the proceeds of the partnership goods applied to pay the individual debt of O. B. Perry to Farnum, and so prevent the creditors of the firm from having the remedy, which the law would otherwise give them, on the property of the firm; and the court instructed the jury that, if such were the object of the sale, it was fraudulent and void as to creditors of the firm.

It is a general rule that the funds of a partnership must be first applied to discharge the partnership debts, and that neither an individual partner nor his creditors have a claim to any thing more than the surplus. This rule has been adopted here, in the fullest extent, in cases of conflicting claims of creditors under our attachment laws.

In *Tappan et al.* v. *Blaisdell*, 5 N. H. Rep. 190, it was decided that the creditor of a firm, having a subsequent attachment of the partnership property, should be preferred to the creditor of one partner, who had a prior attachment; on the ground that the partnership property must be first applied, under our attachment law, to pay the partnership debts. In that case the court say, " the whole partnership property is pledged to the payment of the partnership debts in preference to any other purpose." The same general doctrine is held in *Morrison* v. *Blodgett*, 8 N. H. Rep. 238.

In *Lovejoy* v. *Bowers*, 11 N. H. Rep. 409, it is said, that the property of a firm constitutes a fund to carry on the business of the partnership and to pay partnership creditors, and the separate interest of each partner is an interest in the surplus.

These decisions fully establish the right of partnership creditors to be preferred in the distribution of the partnership property, to creditors of an individual partner, and that this preference

is secured to the partnership creditors, when the parties resort to the remedy which our attachment law gives on the property of debtors. Any attempt by sale or otherwise to divert the partnership funds from the payment of the partnership debts to the discharge of an individual liability of one partner would seem to be a plain violation of this right, as injurious to the creditors of the firm as if the sale were made to keep the property from them for the benefit of the debtor himself; for how could it relieve the case of the partnership creditor to be told, that though he had lost the preference which the law gives him, by a sale contrived for that purpose, the property of the firm had not been kept from him for the use of his debtors, but had gone to another party that, as against him, had not the smallest right to it?

The right of the partnership creditors to this preference being established, no reason occurs to us, why it ought not to be regarded in principle as a fraud on that right, to defeat it by diverting the partnership funds to any other object. The law does not allow the creditor of one partner to obtain any security for his debt by prior attachment of the partnership property, until all their debts are paid. But if the partners could sell or assign their property to pay the debt of one partner, this rule would be successfully evaded in all that numerous class of cases where the partners might be disposed to favor the creditors of the individual partners at the expense of those who had given credit to the firm on the ground of property which they held, as a partnership fund, and which the law, in the language of the case cited, pledges to the payment of their debts. This precise point has not, perhaps, been settled in this state, but is substantially involved in *French* v. *Lovejoy*, 12 N. H. Rep. 458. It was there held, that a surviving partner could not assign the property of the firm to secure his own individual debt. A surviving partner has power to dispose of the partnership property for a lawful purpose, and his assignment would give all the right that could be derived from an assignment of all the partners. The decision in that case was not put on the ground of defective power in the surviving partner to dispose of the partnership pro-

perty, but on the ground that he had no right to dispose of the partnership property in his hands for the payment of his own debt, to the prejudice of the creditors of the firm. In the same case the assignment of the surviving partner by the same instrument was held valid to secure the debt of the firm and said to be void as to the separate debt of the survivor. " The property of the partnership," says the Chief Justice, in delivering the opinion of the court, " might be lawfully appropriated to the payment of the partnership debts ; and F. Lovejoy, as surviving partner, had the right to prefer A. Lovejoy, a creditor of the firm, in that way. He does not appear to have made the assignment for the purpose of paying his private debt to A. Lovejoy ; nor could he lawfully have done so, to the prejudice of the creditors of the firm, had he attempted it."

These authorities lead irresistibly to the conclusion, that a sale of partnership property, made for the purpose of diverting the property from the payment of the partnership debts and applying it to the satisfaction of a demand against one of the partners, is void as to creditors of the firm.

There are some cases which might seem to be in conflict with this conclusion.

In *Ex parte Ruffin*, 6 Vesey, 119, the Lord Chancellor was of opinion, that on a fair dissolution between two partners, one retiring, and assigning the partnership property to the other, and taking a bond for the value, and a covenant of indemnity against their debts, the other continuing the trade separately a year and a half, and then becoming bankrupt, the joint creditors had no equity, attaching upon the partnership effects remaining in specie.

The doctrine of this case was affirmed in *Ex parte Fell*, 10 Vesey, 346, and *Ex parte Williams*, 11 Vesey, 3, and adopted in *Hoxie* v. *Carr*, 1 Sumner, 173.

These cases are put on the ground, that the right of creditors to partnership property is wrought out in equity by virtue of the *lien* which each partner has on all the partnership property for the payment of the partnership debts ; that this lien is discharged by a fair sale from one partner to the others on a dissolution, and after such a sale, the creditors have no foundation in equity, on

Ferson *v.* Monroe.

which they can enforce their right to the application of the partnership property to the payment of their debts.

It is undoubtedly true, that in this State the creditor has no *lien* on the property of his debtor for the payment of his debt, until he has obtained it by attachment, or by conveyance or pledge from the debtor. This is as true with respect to the debt due from an individual as a debt due from a firm. Even after attachment, the creditor has no such interest by virtue of his lien, as is sufficient to warrant the interference of equity, until his debt is ascertained by a judgment, or admitted by confession or default.

A *bonâ fide* sale passes the property, whether it belong to a partnership or to an individual, and by such a sale no right of the creditor is invaded. These decisions put an assignment or a fair division of the property among the partners on the same footing with a fair sale to third persons. In neither case, if the sale is fair, can the creditor trace the specific property and require it to be applied to the payment of his debt. These cases all insist on the fairness of the assignment or division of the partnership property. In *Ex parte Williams,* it is said, that the right of the joint creditors of the firm after a sale, depends on the *bona fides*; that is to say, if the transaction is fair, it shall stand, otherwise, it is inoperative as to the creditors of the firm.

And this brings these cases round to the precise point which was left to the jury by the Court of Common Pleas, whether the sale of the goods by the partners was *bonâ fide,* or intended to defraud the creditors of the firm by defeating their right to the application of the partnership funds for the payment of their debts.

*Rice* v. *Barnard,* 20 Verm. Rep. 479, may perhaps be classed with those cases which deny, that the creditors have a lien on the partnership property after a fair division, or assignment, on dissolution of the firm. It appears, however, that in Vermont the courts have decided, that creditors of a firm have no preference in the attachment of partnership property over the creditors of one partner. *Reed* v. *Shepherd,* 2 Verm. Rep. 120.

*Judgment on the verdict.*