JARVIS & a., Adm'rs, *v.* BROOKS & a., Adm'rs.

The separate creditors of a partner have a preference over the separate estate of their debtor, for the satisfaction of their debts.

Where land of one partner is set off, on execution, for a debt due from the partnership, and afterwards the same land is set off, on execution, for a separate debt of the partner, the separate creditor of the individual partner will hold the land.

WRIT OF ENTRY, for land in Claremont. As to part of the demanded premises, the tenants disclaimed, and as to the residue, pleaded the general issue. For the purposes of this case the facts were agreed to be taken as follows.

On the sixth of September, 1841, Leonard Gilmore and Hiram Gilmore, of Claremont, then partners, under the firm of L. & H. Gilmore, having become insolvent, failed. Nearly, if not

all the personal property of Leonard and Hiram Gilmore, at the time of the failure, was partnership property. The demanded premises were owned by Leonard and Hiram Gilmore, and their father, Garvin Gilmore, as tenants in common, in equal shares, and were not partnership property.

Nathaniel Grout, of whose estate the defendants are administrators, having claims against the firm of L. & H. Gilmore, on the sixth of September, 1841, commenced an action against them, and caused all their firm property, both partnership and separate, and the demanded premises to be attached on this writ, subject to another attachment in favor of Alexander Graham, against the firm of L. & H. Gilmore.

On the seventh of the same September, George B. Upham, of whose estate the plaintiffs are administrators, having claims against Hiram, Leonard and Garvin Gilmore, and one Hills, which claims were not debts of the firm of L. &. H. Gilmore, commenced an action thereon and caused all the property, including the demanded premises, that had been attached the preceding day by Graham and Grout, to be attached on this writ.

Leonard and Hiram Gilmore, in 1843, on the petition of some of their creditors, were declared bankrupts under the law of the United States. Graham recovered judgment, in his suit, and all the personal property, attached as above, was exhausted in satisfying his execution.

February term, 1849, Grout recovered judgment in his suit for $2624.25 damages, and 23.75 costs, and on the twelfth of March, 1849, levied his execution on two undivided third parts of the demanded premises, which were set off, at the appraised value of $2156.22.

August term, 1849, the plaintiffs, as administrators, recovered judgment in the suit of Upham, for $5000.00 damages and $18.57 costs, and on the twenty-first of September, 1849, set off the two undivided third parts of Leonard and Hiram Gilmore, in the demanded premises, on their execution, at the appraised value of $2333.33

It was agreed, if the court should be of opinion, on the foregoing facts, that the plaintiffs were entitled to recover the de-

manded premises, or any part thereof, judgment should be rendered accordingly, unless the defendant should elect to go to trial; and if the court should be of opinion on the foregoing facts, that the plaintiffs are not entitled to recover any part of the demanded premises, judgment should be rendered accordingly, unless the plaintiffs should elect to go to trial.

*Freeman & McClure*, and *Cushing*, for the defendants.

The leading principles of the contract of partnership are, a common interest in the stock of the company, and a personal responsibility for the partnership engagements. 3 Kent's Comm., 26.

Each partner being bound as principal, or surety, for the whole of the partnership debt, is allowed to maintain a lien upon the partnership property, until he is relieved from such liability, and this lien partnership creditors are allowed to enforce, in exclusion of separate creditors, for the benefit of the partners. *Tappan* v. *Blaisdell*, 5 N. H. Rep., 191; *Gibson* v. *Stevens*, 7 N. H. Rep., 356; *Morrison* v. *Blodgett*, 8 N. H. Rep., 238; *Washburn* v. *Bellows*, 19 Verm. Rep., 276.

A partnership contract imposes precisely the same obligation upon each of the partners, as a sole and separate contract does, and the partnership creditors have equal legal rights, with the separate creditors, to resort to the private funds of the partners. *Newman* v. *Bradford*, 16 Pick. Rep., 570; *Allen* v. *Wells*, 22 Pick. Rep., 450; *Bardwell* v. *Perry*, 19 Verm. Rep., 272.

Both, and all the partners, are liable to the full amount of the partnership debts, but the debt of the individual must be satisfied out of his separate property alone.

The principle of preference, in favor of the creditor of the partnership, has been admitted simply to protect the partners against being made liable to pay the separate debts of the partner, and not upon any notion of marshalling assets among different classes of creditors, though the principle operates, indirectly, to give the creditors of the firm a preference.

The court of equity interfered to prevent creditors of the firm from coming upon private property of the individual part-

ner, until all funds of the firm are exhausted, on the ground that the partners have a fund which the law applies first to the payment of their debts. In this case the creditor of the firm has exhausted the partnership property, and may now come upon the other fund, which is the private property of the individual partner.

*Snow* and *J. Parker*, for the plaintiffs.

1. Formerly, at law in England, the separate creditor of one of several partners might seize the partnership property and sell the undivided interest of his debtor upon the execution.

There can be little doubt that he might levy on specific portions of the partnership property, and sell the undivided share of his debtor, in what was thus seized and this without reference to the claims of the partnership creditors ; the partners being treated as tenants in common. *Hayden* v. *Hayden*, 1 Salk., 392 ; *Jacky* v. *Butler*, 2 Ld. Raym., 871 ; *Backhurst* v. *Clinkhard*, 1 Shower, 169 ; *Lyndon* v. *Gorham*, 1 Gall., 368, and cases cited.

Equity held that the partnership property was to be applied in the first instance, to the payment of the partnership debts. This is a well settled principle of equity in this country, as well as in England, and is applied to real as well as personal estate. *Moody* v. *Paine*, 2 Johns. Ch. Rep., 548 ; *Matter of Smith*, 16 Johns. Rep., 102 ; *Witter* v. *Richards*, 10 Conn. Rep., 27 ; *Filley* v. *Phelps*, 18 Conn. Rep., 294 ; *United States* v. *Hack*, 8 Peter's Rep., 275 ; *Smith* v. *Jackson*, 2 Edward's Ch. Rep., 28 ; *Delmonico* v. *Gillaume*, 2 Sandford's Ch. Rep., 366 ; *Buchan* v. *Sumner*, 2 Barb. Ch. Rep., 165.

2. The practice at law, in this country, was formerly like the ancient practice at law in England, and in some of the States it is still adhered to, with the modification, perhaps, that the purchaser, at a sale upon execution, takes subject to an account and is entitled only to the share of his debtor in the surplus. See *Scrughan* v. *Carter*, 12 Wend. Rep., 131, and other New-York cases.

The cases in New-Hampshire, have followed the rule in equi-

ty, so far as it can be followed consistently with the mode of proceeding at law. *Tappan* v. *Blaisdell*, 5 N. H. Rep., 190 ; *Gibson* v. *Stevens*, 7 N. H. Rep., 357 ; *Morrison* v. *Blodgett*, 8 N. H. Rep., 238 ; *Paige* v. *Carpenter*, 10 N. H. Rep., 77 ; *Lovejoy* v. *Bowers*, 11 N. H. Rep., 404 ; *Dow* v. *Sayward*, 12 N. H. Rep., 271 ; *French* v *Lovejoy*, 12 N. H. Rep., 458.

In the absence of insolvent laws for the purpose, the courts of law cannot undertake to make distribution among all the creditors, but holding that the class of partnership creditors is the only class that has a right to seize and sell the corpus of partnership property, or specific portions of it, individual creditors of that class, must be permitted to obtain such preference, by priority of attachment and levy, as the law allows in other cases. " Such *is* and should be the practice."

Wherever this view of the courts of equity, respecting the nature of a partnership, and the rights of partnership creditors, is adopted, the other doctrines of equity, which make it a consistent whole, upon this subject, should also be adopted, so far as they may be, consistently with the forms of legal proceedings

3. It is a part of the same principle in equity, or a correlative principle, that the separate creditors of individual partners, are entitled to a like preference of satisfaction out of the separate estate of their debtors. *Twiss* v *Massey*, 1 Atk., 67 ; *Ex parte Cooke*, 2 P. Wms., 500 ; *Ex parte Elton*, 3 Ves., 240 ; 4 Ves., 837, 396 ; *Murray* v. *Murray*, 5 Johns. Ch. Rep., 72 ; *Wilder* v. *Keller*, 3 Paige, 167 ; *Egberts* v. *Wood*, 3 Paige, 527 ; *Waddrop* v. *Ward*, 3 Desaussure, 203 ; *Hall* v. *Hall*, 2 McCord's Ch. Rep., 302 ; *Morgan* v. *his creditors*, 20 Martin L. Rep., 509.

And this extends so far as to prevent a surviving partner from giving a preference to individual debts ; 7 Paige, 26. So at law ; 12 N. H. Rep., 458. And to prevent an individual debtor, in a general assignment of his property, from giving a preference to partnership creditors, to the prejudice of his separate creditors. It is held to be a fraud upon them. *Jackson* v. *Cornell*, 1 Sanford's Ch. Rep., 348.

The partnership creditors cannot surely, upon principle, be

permitted to take, by process of law, what it would be a fraud in the debtor to give them by assignment.

There is no more difficulty in giving preference at law to the attachment of the separate creditor, upon the separate property, than there is in giving the partnership creditor a preference in attachments upon the partnership property.

We are aware that a different view was accepted in *Newman v. Bagley and Trustee,* 16 Pick. Rep., 570, and in *Allen v. Wells,* 22 Pick. Rep., 450 ; but all the considerations which affect the question do not seem to have been adverted to in those cases.

Mr. Justice *Gibson,* in the superior court of Pennsylvania, came to a different conclusion in *Bell* v. *Newman,* 5 S. & R., 93, where he said, " if the policy of trade requires that the joint fund shall be appropriated, in the first instance, to the payment of the joint debts, justice, equity and conscience, on the other hand, without interfering with that policy, demand that the separate creditors, should at least have the miserable advantage of the same priority, as regards the separate estate. It is unconscionable that one class should have the exclusive benefit of one fund, and come in concurrently in the other."

PERLEY, J. At law, until equity interfered and introduced another rule, the creditor of one partner might take his share in the partnership goods on a *fi. fa.,* and sell that share as if the partner had been tenant in common. The vendee under the sheriff's sale, became tenant in common with the other partners, and was not subject to the partnership account. He took, not his debtor's share of the surplus, after the partnership liabilities were satisfied, but an absolute undivided share in the chattel sold. *Heydon* v. *Heydon,* Salkeld, 292 ; *Dutton* v. *Morrison,* 17 Ves., 205.

In the administration of the English bankrupt laws, the rule was early established that the creditor of one partner could take nothing out of the joint estate for the satisfaction of his debt, till all the partnership debts were paid ; and this doctrine was adopted in equity as a general rule, by which a preference was secur-

ed to the partnership creditor, over the partnership funds, for the satisfaction of their debts. In England, courts of law now recognize the principle to some extent and for some purposes, but the rule is said to be there generally disregarded at law. *Waters* v. *Taylor*; 2 Vesey & Beames, 301 ; 1 Story on Equity, 625.

As the creditors of the partnership are preferred, in the application of the partnership estate, so the creditor of the individual partner is preferred as it respects the separate property. " In case of joint traders becoming bankrupt, the joint creditors shall first be paid out of the partnership effects, and the separate creditors, out of the separate effects, and if any surplus of the partnership effects, after all the partnership debts are paid, the separate creditors to come in, and so, *vicē versā*, the partnership creditors to come in on a surplus of the separate estate." *Ex parte Cook*, 2 P. Wms., 500; *Ex parte Crowder*, 2 Vernon, 706; *Ex parte Rowlandson*, 3 P. Wms., 408; *Ex parte Baudier*, 1 Atkins, 98; *Gray* v. *Chiswell*, 9 Vesey, 118.

The preference allowed to the separate creditor, over the separate estate of his debtor, appears to have been introduced, at the same time with the corresponding preference given to the partnership creditors, over the partnership estate. They are reciprocal rules, and dependent on the same equitable principle. The rule, and the equitable grounds of it, are thus stated by counsel in *Grey* v. *Chiswell*, 9 Vesey, 120. " The court makes a just arrangement between both estates, and both parties are before the court, but there the joint creditors cannot have recourse to the separate fund, till the separate creditors are paid ; and the course of proceeding is founded on, not merely convenience, but substantial justice. The joint creditors hence increase the joint fund, and those who make advances on the separate credit, having created the separate fund, the natural justice is, that the funds so constituted shall be applied to the respective demands."

It would seem to have been sometimes supposed, that the claim of the separate creditor to a preference over the separate estate, was denied and disallowed in the time of Lord *Thurlow*. *Allen* v. *Wells*, 22 Pick. Rep., 453.

This opinion, we think, has gone on a misapprehension of the design and effect of the orders made on this subject, by that chancellor. In order to apply the equitable rule for marshalling the assets of the partnership and of the individual partners, and assigning them to the respective classes of debts, it was necessary, of course, that an account should be taken of the joint, and of the separate estates. If a joint commission issued against the partners, such accounts were taken without special application to the court, and the respective estates were applied to the claims against each, according to the rule above stated. *Ex parte Baudier*, 1 Atkins, 98; 1 Cook's Bankrupt L., 9.

But where the commission was against one of the partners, no account could be taken of the joint estate, under that commission, without a bill in equity, brought for that purpose. It is said, that, in early times, a joint commission was sometimes sued out, after a separate commission, and both were allowed to go on together; but of late two commissions are not permitted at the same time. *Murray* v. *Murray*, 5 Johns. Ch. Rep., 76.

During and before the time of Lord *Hardwicke*, the joint creditor was allowed to prove his debt under the separate commission, for the purpose of objecting to the allowance of a certificate, but not to take a dividend; and under this rule, if the joint creditor desired an account to be taken of the joint and several estates to be distributed according to the rule in equity, the burden was thrown upon him, the joint creditor, to file his bill, and bring before the court the solvent partner, and the assignees of the bankrupt, and hence the account of the joint estate taken in their presence. *Murray* v. *Murray*, 5 Johns. Ch. Rep., 72.

In 1785, Lord *Thurlow* changed this rule, and ordered that, on petition of a joint creditor, he should be allowed to prove his debt and take dividends under a separate commission, *pari passu* with the separate creditor. *Ex parte Hogdson*, 2 Brown, 5.

The chancellor, sitting in bankruptcy, had both a legal and equitable jurisdiction. The commission was considered to be in the nature of an execution; and *at law* a judgment, recovered by a joint creditor, was regarded in the same light as a judgment

recovered by a separate creditor, and satisfied in the same way out of the separate property. If the chancellor, therefore, in making these orders chose to consider himself as acting in the exercise of his *legal* jurisdiction, he could recognize no distinction between the joint and separate creditors in their claim to be satisfied out of the separate estate. The *legal* right of the joint creditor was clear; but equity interfered, when application was made to that jurisdiction, by marshalling the joint and separate assets equitably between and among the joint and separate creditors. *Murray* v. *Murray*, 5 Johns. Ch. Rep., 72.

As a rule of practice, Lord *Thurlow*, in the order allowing the joint creditor to prove his debt under the separate commission, thought it expedient, as matter of convenience, to look to the legal, rather than the equitable, rights of the parties, and in this preliminary order to place the joint creditor on his *legal* footing of equality with the separate creditor. But this change, in a mere matter of practice, had no effect to change the substantial and ultimate rights of joint and separate creditors to a distribution of the respective funds, according to the general rule in equity, which had there been recognized and established for a century. Upon a proper application to the equitable jurisdiction of the chancellor, the separate creditor had the benefit of of that rule on exactly the same principle as in the former practice. The change in practice merely shifted the burden of bringing a bill to take the joint account from the joint creditor to the assignees under the separate commission.

The case of *Ex parte Hodgson*, is meagerly reported in 2 Brown. A much more satisfactory account of it is given by Lord *Eldon* in *Dutton* v. *Morrison*, 17 Vesey, 207, and by that account it appears that Lord *Thurlow* held that "it was upon the assignees to bring their bill to have the account settled." And this appears clearly to have been the only consequence of the change in the rule, that it compelled the assignees, who represented the separate creditors, to bring the bill for a joint account, instead of leaving it to the joint creditors, as it stood under the former rule.

In 1796, Lord *Loughborough* restored the former rule. *Ex*

*parte Elton*, 3 Vesey, 238. The statements and discussions in *ex parte Elton*, leave no shadow of doubt as to the operation of Lord *Thurlow's* rule. Lord *Loughborough* desired the assistance of the bar, and those who were peculiarly conversant with the subject, to point out the *balance of convenience and inconvenience* between the two rules of practice. He said, that he understood from the attorney general, Sir John *Scott*, that it was not settled as matter of law, but of convenience, and subject to the limitation, that if the assignees of the separate estate think fit or will undertake to file a bill, a creditor admitted to favor is to be restrained from receiving a dividend. The difficulty was in settling on the best and most convenient way of obtaining an account of the joint estate, when the commission was against one of the partners, and Lord *Loughborough* says : " wherever my order will procure an account of the joint estate, there can be no harm, for then I shall give the usual directions to apply the funds respectively, the joint estate to the joint debts, the separate to the separate debts, the surplus of each to come in reciprocally to the creditors remaining upon the other." He says further, as to the practice under Lord *Thurlow's* rule, " what I order to-day, sitting in bankruptcy, I shall forbid to-morrow, sitting in chancery, for it is quite of course to stop the dividend upon a bill filed. The plain rule of distribution is that each estate shall bear its own debts. The equity is so plain that it is, of course, in a bill filed. The object of a commission is to distribute the effects with the least expense. Every order I make to prove a joint debt upon a separate estate, must produce a bill in equity."

Lord *Eldon*, after some characteristic doubts and misgivings, allowed the rule of his immediate predecessor to stand. He appears to have been embarrassed with the difficulty that, under Lord *Loughborough's* rule, the creditor was not made a regular party to the proceedings under the commission ; but, on the whole, thought it better to let the rule stand, which he found established. *Dutton* v. *Morrison*, 17 Vesey, 207.

These rules, respecting orders for proving joint debts under a separate commission, are thus treated by successive chancellors as mere matters of practice, which they had power at their dis-

cretion to change from time to time, according to their ideas of expediency and convenience.   It is entirely inconsistent with the stable character of English jurisprudence to suppose that a judge could assume to change on such grounds, a rule of law affecting the substantial rights of creditors to the satisfaction of their debts.

We understand the rule in equity, which gives the separate creditor a preference over the separate estate, and the rule which gives the joint creditor a preference over the joint estate of partners, to have grown up and always existed together, and to de-depend on the same equitable principle of equality and reciprocity.

In this State the equitable rule, which secures to the partnership creditor a preference in the application of the partnership estate, was adopted at least as early as 1830, and has ever since been uniformly recognized and applied at law to claims of creditors enforced under our attachment laws.·  *Tappan* v. *Blaisdell*, 5 N. H. Rep., 190 ; *Gibson* v. *Stevens*, 7 N. H. Rep., 357 ; *Morrison* v. *Blodgett*, 8 N. H. Rep., 236 ; *Page* v. *Carpenter*, 10 N. H. Rep., 77 ; *Lovejoy* v. *Bowers*, 11 N. H. Rep., 104 ; *Dow* v. *Sayward*, 12 N. H. Rep., 271 ; *French v. Lovejoy*, 12 N. H. Rep., 548 ; and in this State the claim of the partnership creditor, to his preference over the partnership estate, has not been put on the ground of a lien among the partners, but is asserted as a legal right of the creditor.  If this right depended on a lien of the partners, the partners could, of course, waive and discharge their lien, and thus defeat the right of the partnership creditors to their preference in the application of the partnership funds.  But it was decided, in *Ferson* v. *Monroe*, 1 Foster's Rep., 462, that a sale of partnership property made by the partners to satisfy a debt due from one of them, with the intention of preventing the creditors of the firm from taking the property to satisfy their partnership debts, was a fraud on such creditors and void as to them.  .

The right of the partnership creditors to a preference, in the application of the partnership funds, having been admitted in this State, the question raised in this case is, whether the cor-

responding and correlative rule, giving a preference to the individual creditor over his debtor's separate estate, is also to be considered as having been adopted as a branch and member of the same equitable doctrine.

If the preference is admitted in favor of the joint creditor, but denied to the separate creditor, the principle of equality and reciprocity, upon which the interference of equity with the legal rule has been vindicated in England, wholly fails. At law the separate creditor might take his debtor's moiety in the partnership estate, and sell it for his debt. When he comes to assert this legal right, equity interposes with the rule that partnership debts must first be paid out of the partnership property ; and in answer to his complaint that equity has taken from him his legal right, he may be told in England that equity, by way of compensation, has given him a corresponding preference in the application of his debtor's separate estate. We have admitted the equitable rule, which takes away the separate creditor's legal right to satisfy his debt upon an undivided moiety of the partnership property. Principle, consistency and equal justice to the separate creditors, would seem to require that we should also adopt the other branch of the same equitable doctrine, and there is no greater difficulty in administering one branch of the doctrine than the other ; both may be directly asserted at law with equal convenience.

In this country the rule, giving the partnership creditors a preference for the satisfaction of their debts, has been generally adopted. In Vermont it is understood to have been rejected. *Reed* v. *Shepherd,* 2 Verm., 120. In Massachusetts, the creditors of the partnership are preferred, but a preference over the separate estate, for the satisfaction of his debt, has been denied to the separate creditor. *Newman* v. *Bailey,* 16 Pick. Rep., 570 ; *Allen* v. *Wells,* 22 Pick. Rep., 450.

But the cases cited for the plaintiff show that the preponderence of authority, in this country, is in favor of allowing the separate creditor his preference over his debtor's separate property. And the supreme court of the United States, in the case of *Merrill* v. *Neill,* 8 Howard's Rep., 414, published since the argument, have come to the same conclusion.

Jarvis *v.* Brooks.

We are not informed of any case in which the question here raised has been directly settled in this State ; but in *Morrison* v. *Blodgett*, 8 N. H. Rep., 248, it would seem to have been understood that the whole doctrine of marshalling the respective estates of the partnership and the individual partners, according to the rule of equity in England, was adopted here. For the court in that case, say, " if courts of law are unable to carry out the principles of equity fully, *by distributing the joint and separate effects among the joint and separate creditors respectively*, it may perhaps be well that they have been disposed to follow the principles established in chancery, so far as the nature of their proceedings will permit, leaving the equity jurisdiction to supply, as well as it may, the deficiency.

We are on the whole of opinion that the rule giving the separate creditor a preference for the satisfaction of his debt, out of the separate estate of his debtor, must be considered as having been adopted in this State, along with the other corresponding rule of equity, which gives the creditor of the partnership a preference over the joint funds.

On the case stated, the plaintiffs must recover two undivided third parts of the demanded premises, unless the defendant shall elect a trial in the common pleas.